**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| RED HAT, INC., | CASE NO. 4:24-cv-00130 |
|         Plaintiff, | |
|    v. | |
| COMPETITIVE ACCESS SYSTEMS, INC., | |
|         Defendant. | |

<u>**VERIFIED COMPLAINT**</u>

## NATURE OF THE ACTION

1.      This is an action for declaratory relief arising under the patent laws of the United States, and an action for judgment of a violation of the North Carolina Abusive Patent Assertion Act (N.C. Gen. Stat. §§ 75-140 et seq.) (hereinafter the "APAA").

2.      This case arises out of bad-faith attempts by Competitive Access Systems, Inc. ("CAS") to extract and extort an unsupported and unreasonable license from Red Hat, Inc. ("Red Hat").[1]

3.      By enacting the APAA, North Carolina expressly sought to counter bad-faith patent threats against North Carolina businesses. *See* N.C. Gen. Stat. Ann. § 75-141 ("North Carolina has a strong interest in patent matters involving its citizens and its businesses, including protecting its citizens and businesses against abusive patent assertions and ensuring North Carolina companies are not subjected to abusive patent assertion by entities acting in bad faith.")

4.      Beginning on October 2, 2023, and over the course of several email correspondences, and meetings thereafter, CAS has repeated its inadequate, unsupported, and meritless accusation that Red Hat's products infringe each and every one of the Asserted Patents, and has demanded that Red Hat take a license to the Asserted Patents.

5.      Indeed, CAS alleges that Red Hat infringes all seven of the Asserted Patents and demanded that Red Hat pay a licensing fee. However, despite nearly eight months of repeated requests by Red Hat asking for evidence to support CAS's allegations, CAS has still failed to

---

[1]   CAS alleges infringement of seven U.S. Patents: (1) U.S. Patent No. 11,582,343 (the '343 patent) Exhibit 1; (2) U.S. Patent No. 11,418,641 (the '641 patent) Exhibit 2; (3) U.S. Patent No. 10,868,908 (the '908 patent) Exhibit 3; (4) U.S. Patent No. 9,350,649 (the '649 patent) Exhibit 4; (5) U.S. Patent No. 8,861,349 (the '349 patent) Exhibit 5; (6) U.S. Patent No. 8,228,801 (the '801 patent) Exhibit 6; and (7) U.S. Patent No. 7,606,156 (the '156 patent) Exhibit 7, (collectively, the "Asserted Patents").

provide claim charts describing that alleged infringement for the majority of the Asserted Patents, and the claim charts it did provide are admittedly incorrect.

6.     As explained in greater detail below, Red Hat does not infringe any valid or enforceable claim of any of the Asserted Patents.

7.     CAS's objectively baseless allegations of infringement against a North Carolina company are exactly the type of bad-faith licensing demands that the North Carolina Abusive Patent Assertion Act was designed to prevent. CAS is in violation of the APAA.

8.     Therefore, Red Hat requests relief as follows: (a) a declaratory judgment that Red Hat's products do not infringe the Asserted Patents because they do not meet each and every limitation of any asserted claim; and (b) the entry of appropriate injunctive relief and the recovery of an award of exemplary damages in an amount equal to $50,000 or three (3) times the total of damages, costs, and fees, whichever is greater, resulting from CAS's unlawful and abusive conduct in violation of the APAA and other applicable law.

## THE PARTIES

9.     Plaintiff Red Hat is a North Carolina corporation organized and existing under the laws of the state of Delaware, with its principal place of business in this District at 100 East Davie Street, Raleigh, NC 27601. Red Hat is a well-known software company that provides open source software products, including its Linux products, to enterprise customers.

10.     On information and belief, CAS is a Texas corporation with its principal place of business at 3019 Charles Drive, Wylie, Texas 75098. CAS was founded by Eric Delangis, the sole named inventor of the Asserted Patents.

11.     On information and belief, CAS is not an "Operating Entity" as defined in the APAA, (N.C. Gen. Stat. §75-142(5)), and does not manufacture or commercialize any product or

service that is covered by the Asserted Patents. Instead, CAS's business model is predominantly directed to monetizing its patents through licensing.

12.     CAS has engaged in the conduct described herein, including abusive conduct under the APAA, and accusing Red Hat of allegedly infringing the Asserted Patents.

## JURISDICTIONAL STATEMENT

13.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1–390.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and 2201(a).

15.     Because the amount in controversy exceeds $75,000, and because Red Hat and CAS are diverse parties, the Court also has original jurisdiction pursuant to 28 U.S.C. § 1332.

16.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted or that may be asserted that are so related to claims within the original jurisdiction of this action that they form part of the same case or controversy under Article III of the United States Constitution, including over Red Hat's claim under the APAA (N.C. Gen. Stat. §§ 75-140 *et seq*.) because, as set forth below, the APAA claim is related to the claim(s) over which the Court has original and subject matter jurisdiction.

17.     This Court has personal jurisdiction over CAS because CAS has knowingly and repeatedly directed its licensing activities into this District, not least as evidenced by its unlawful attempt to extract a license from Red Hat. By seeking out and threatening litigation against Red Hat, an entity known to exist under the laws of and operate in North Carolina, and in this District, CAS should reasonably be expected to be subject to personal jurisdiction in this District.

18.     Each of CAS's communications with Red Hat including, but not limited to, the

October 2, 2023 Demand Letter, which was addressed to (and delivered to) a North Carolina entity at a North Carolina address, and its video conference on August 27, 2024, which was conducted with two Red Hat employees located in Raleigh, North Carolina, constitutes a separate act sufficient to warrant personal jurisdiction over CAS.

19.     The Court has specific personal jurisdiction over CAS because the causes of action herein arise out of and relate to CAS's contact with the state and this District, namely sending the Demand Letter to Red Hat at its North Carolina address and its correspondence and telephone conferences with Red Hat thereafter relating to licensing the Asserted Patents.

20.     Further, the Court has specific personal jurisdiction over CAS because it has special jurisdiction under the APAA. "The NC APAA directly addresses the issue of North Carolina's jurisdiction over out-of-state defendants accused of violating the statute thus establishing itself as a 'special jurisdiction' statute." *Schaefer Sys. Int'l, Inc. v. Aloft Media, LLC*, No. 322CV00513KDBDCK, 2023 WL 4055712, at *6 (W.D.N.C. June 16, 2023) (citing N.C. Gen. Stat. § 75-145(e)).

21.     Pursuant to § 75-145(e) of the APAA, "any person who has delivered or sent, or caused another to deliver or send, a demand to a target in North Carolina has purposefully availed himself or herself of the privileges of conducting business in this State and shall be subject to suit in this State, whether or not the person is transacting or has transacted any other business in this State."

22.     CAS has "delivered or sent, or caused another to deliver or send" a demand letter to Red Hat in North Carolina and in this District, sufficient to invoke § 75-145(e).

23.     Red Hat's products that are immediately threatened with patent infringement were developed, in part, in North Carolina, and many of Red Hat's customers are also based in North

Carolina. Red Hat was founded in part by Marc Ewing, who began his own distribution of Linux from his home in Durham, North Carolina. Today, Red Hat's corporate headquarters are located in Raleigh, North Carolina, and Red Hat also has offices in Charlotte and Durham, North Carolina. Red Hat employs more than 2,000 engineers and other individuals in the state of North Carolina. In fact, CAS knows that Red Hat and its technologies are based in North Carolina and has directed its correspondence to Red Hat in North Carolina.

24.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), because a substantial part of the events giving rise to Red Hat's claims occurred in this District, and because CAS is subject to personal jurisdiction here.

## BACKGROUND

### *RED HAT AND ITS OPEN SOURCE SOFTWARE*

25.     Red Hat is a leading contributor to the open source software community. Although Red Hat makes software available under open source licenses, Red Hat derives revenue from aggregating, certifying, testing, enhancing, packaging, maintaining, supporting, and influencing the future direction of the software, among other value-added offerings. Red Hat remains committed to the open source development model, and many thousands of Red Hat's employees have contributed and continue to contribute to the open source software ecosystem, including by developing and releasing code under open source licenses. Red Hat believes that the open source development and licensing model offers important advantages for its customers over proprietary software development and licensing models.

26.     Open source software is software in which the source code is made available to users for inspection, modification, and distribution. Generally, when a computer program is authored, the programmer writes code in a human-readable programming language called "source code." The source code can be compiled into another form, called "object code," that is executable

by a computer microprocessor. With open source software, the source code itself is made available to the recipient under conditions set forth in an accompanying license, which grants relatively broad rights to recipients to use, copy, modify, and distribute the software, but may also limit the ways in which the code or derivative works of the code can be distributed so as to benefit the broader developer community.

*RED HAT ENTERPRISE LINUX*

27.     Linux is an open source operating system (OS). An operating system is the software that manages all the hardware and software on a computer, acting as a bridge between the user and the computer's hardware. Linux was originally conceived by Linus Torvalds in 1991 and was based on the principles and design of the Unix OS, which originated in the late 1960s at AT&T's Bell Labs. Unlike Unix OS, which is proprietary, locked-down, and delivered as-is and unmodifiable, Linux is open source, meaning that anyone can run, study, share, and modify the software. Linux contains numerous components that are licensed under the GNU General Public License (GPL) and other open source licenses.

28.     Red Hat initially saw success in supporting a custom distribution of Linux and is now one of the largest corporate contributors to the Linux kernel, which is a collection of programs at the heart of the Linux operating system. Through this work, Red Hat developed Red Hat Enterprise Linux ("RHEL"), which has become one of the most popular and widely-used Linux distributions in the enterprise market. Today, RHEL supports and powers software and technologies for automation, cloud, containers, middleware, storage, application development, microservices, virtualization, management, artificial intelligence, and more.

*CAS SENDS DEMAND LETTER*

29.     CAS first contacted Red Hat via letter dated October 2, 2023, attached hereto as Exhibit 8 (hereinafter the "Demand Letter").

30.    The North Carolina Abusive Patent Assertion Act ("APAA") delineates information that should be included in a proper patent licensing demand letter.

31.    CAS's Demand Letter did not include critical information required by § 75-143(a)(1) of the APAA. For example, the Demand Letter did not contain "the address of the patent owner or owners and assignee or assignees," or "[f]actual allegations concerning the specific areas in which the target's products, services, and technology infringe the patent or are covered by specific, identified claims in the patent."

32.    The Demand Letter did not attach any infringement contentions or claim charts.

33.    Nor did the Demand Letter indicate in any other way that CAS had performed any infringement analysis. The Demand Letter contained only conclusory allegations the Asserted Patents "cover MPTCP as described in RFC 6824 as well as many non-standardized proprietary multipath routing techniques" and that "Your company may already be using MPTCP protocol, or a proprietary method, in your Unix products." Red Hat, however, does not sell or distribute any Unix products.

34.    Yet, the Demand Letter still offered to license the Asserted Patents to Red Hat. Because no analysis was provided, the offer of such license was not based on any reasonable estimate for the value of the unspecified license.

35.    The Demand Letter was addressed to the "General Counsel" of "Red Hat Corporate HQ" at 100 East Davie Street, Raleigh, NC 27601.

36.    Accordingly, when CAS sent the Demand Letter, CAS knew that Red Hat was located in North Carolina.

37.    The Demand Letter was signed by Patent Attorney Clay McGurk.

*RED HAT REQUESTS BASIC INFORMATION MISSING FROM DEMAND LETTER*

38.    Since the initial Demand Letter, CAS has contacted Red Hat numerous times in a

directed effort to persuade Red Hat into accepting a license to a portfolio of patents which Red Hat does not infringe. Specifically, CAS has contacted Red Hat on at least the following occasions:

- November 28, 2023 (email and telephonic conference)
- February 2, 2024 (email)
- June 6, 2024 (telephonic conference)
- June 18, 2024 (email)
- August 27, 2024 (video conference)

39.    Throughout the communications, CAS continued to deliberately direct their communications to Red Hat in Raleigh, North Carolina.

40.    For example, Mr. McGurk repeatedly communicated via e-mail with David B. Perry, an in-house attorney at Red Hat who serves as Director of Litigation & Intellectual Property at Red Hat.

41.    Mr. Perry is based in North Carolina and his e-mail signature lists a phone number with the 919 area code of Raleigh, North Carolina.

42.    On November 28, 2023, Mr. Perry spoke with Mr. McGurk and requested that CAS provide claim charts to support CAS's infringement allegations. Mr. McGurk agreed to provide the claim charts by mid-December.

43.    Neither Mr. McGurk nor CAS provided the requested claim charts by mid-December, and no explanation was given for the failure to provide such claim charts.

44.    On January 29, 2024, Red Hat followed up with Mr. McGurk and CAS for the requested claim charts.

45.    Four days later, on February 2, 2024, Mr. McGurk responded that CAS would hopefully be providing the claim charts soon.

46.    Four months later, in May 2024, Red Hat again followed up with Mr. McGurk and CAS for the requested claim charts but received no response.

47.     Two months later, on June 18, 2024, Mr. McGurk sent claim charts to Red Hat. However, Mr. McGurk provided charts for only three of the Asserted Patents.

48.     All three of the charted Asserted Patents are expired.

49.     The claim charts also cited to the old RFC 6824 standard, which was rendered obsolete by the Multipath TCP RFC 8684 standard.

50.     The allegations contained in CAS's limited claim charts are inadequate, meritless, and deceptive.

51.     For example, despite having approximately eight months after sending the Demand Letter to prepare the claim charts, CAS prepared charts for only three of the Asserted Patents and admitted that the charts identified the wrong standard.

52.     CAS provided no reason for the delay in providing the claim charts.

53.     CAS never claimed that they were unable to access the evidence cited in the claim charts before sending the Demand Letter. CAS relied on Red Hat's public information (available at all relevant times) in their claim charts. Further, CAS accused Red Hat's open source product and a publicly available standard.

54.     On August 27, 2024, Red Hat met with Mr. McGurk to discuss CAS's infringement allegations. In this meeting, Red Hat provided some of its reasons for why it does not infringe the CAS patents included in the claim charts. CAS maintained that Red Hat is infringing the Asserted Patents.

55.     To date, CAS has not provided any licensing terms. Instead, CAS has demanded that Red Hat make a settlement offer first, despite Red Hat providing its reasons for non-infringement.

56.     Rather than providing claim charts detailing infringement for the majority of the

patents or any concrete licensing offer, CAS demanded that Red Hat enter into a self-serving, asymmetrical NDA and tolling agreement that purported to allow CAS the unilateral ability to enforce its rights, at its discretion, six (6) months from termination, while preventing Red Hat from taking any action to defend itself or clear the cloud of baseless infringement against its products and customers at the same time.

*RED HAT DOES NOT INFRINGE THE ASSERTED PATENTS*

57.     Red Hat does not directly or indirectly infringe any claim of the Asserted Patents. To the best of Red Hat's knowledge, no third party infringes any claim of the Asserted Patents by using Red Hat's Linux products. Red Hat has not caused, directed, requested, or facilitated any such infringement, must less with the specific intent to do so. Red Hat's Linux-based products are not designed for use in any combination which infringes any claim of the Asserted Patents. To the contrary, they are products with substantial uses that do not infringe any claim of the Asserted Patents.

58.     CAS alleges that RHEL's use of the standardized protocol MPTCP (multipath transmission control protocol) infringes the Asserted Patents. MPTCP is a protocol that computers theoretically may use for communicating across the internet but is disabled by default in RHEL.

59.     CAS did not invent MPTCP. MPTCP was described in a standardized RFC (Request for Comment) document titled RFC 6824. *See* Exhibit 9 (A. Ford *et al.*, *TCP Extensions for Multipath Operation with Multiple Addresses*, January 2013, https://datatracker.ietf.org/doc/html/rfc6824). RFC 6824 was written by A. Ford, C. Raiciu, M. Handley, and O. Bonaventure. Subsequently, those authors wrote a new RFC—RFC 8684—which "obsoletes the v0 specification of Multipath TCP [RFC6824]." *See* Exhibit 10 (A. Ford *et al.*, *TCP Extensions for Multipath Operation with Multiple Addresses*, March 2020, https://datatracker.ietf.org/doc/html/rfc8684).

10

60. As an initial matter, the Asserted Patents are not directed to MPTCP, but instead, are (at best) limited to a very different transmission protocol called Multilink PPP (Point-to-Point Protocol). For example, during prosecution of the '349 patent, the Patent Office issued a § 112 rejection over the pending claims due to the use of the word "multilink." In response, CAS argued that "Multilink connections are explained in great detail starting with paragraph 74 under the heading 'Multilink PPP Connections' and continuing through paragraphs 79 of the specification of the present application."

61. Indeed, under the heading "Multilink PPP Connections," the specification of the '349 patent repeatedly describes "multilink PPP." '349 patent at 11:1–8 ("Referring to FIG. 7, the RCG implements broadband over POTS by employing an 802.11 b/g wireless interface to configure a ***multilink PPP bundle***—87 (per RFC 1990) comprised of the POTS lines connected to up to 32 RCGs. The limitation of 32 RCGs in a ***multilink PPP bundle*** is an arbitrary number and can be scaled up or down as required to support changes in network equipment capabilities); 11:34–38 ("The ***multilink PPP connection***—87 is initiated by an RCG when it determines that the file (or streaming service) that it is to download (receive) is of sufficient size or requires a minimum amount of bandwidth to justify the use of a ***multilink PPP***"); 11:46–50 ("Referring to FIG. 7, an RCG—85 that decides to initiate a ***multilink PPP session*** with a remote computer i.e. internet URL, requests a ***multilink PPP session*** with that URL resource via Link Control Protocol (LCP) session management."). Thus, the claims require a Multilink PPP connection.

62. Red Hat's Linux products do not infringe the Asserted Patents at least because the Asserted Patents are limited to Multilink PPP connections, which are distinct from the Multipath TCP or MPTCP standard. Because the claims of the Asserted Patents require Multilink PPP connections, Red Hat's products that use MPTCP cannot infringe.

63.     Red Hat's Linux products do not infringe the '349 patent at least because MPTCP does not have a "second device" that accepts a "multilink request" and also "concurrently receives. . .data" as required by the claims of the '349 patent.

64.     Red Hat's Linux products do not infringe the '649 patent at least because MPTCP does not send "multipath information to each of the network-edge devices" as required by the claims of the '649 patent. Moreover, Red Hat's Linux products do not infringe the '649 patent at least because MPTCP does not have "multipath control information [that] indicates" a device "will join" a multipath connection as required by the '649 patent.

65.     Red Hat's Linux products do not infringe the '343 patent at least because MPTCP does not enable a connection "having an effective bandwidth including" concurrently using a first portion of the first bandwidth and a second portion of the second bandwidth as required by the claims of the '343 patent. Further, Red Hat's Linux products do not have the third connection having an effective bandwidth including the allocated first portion of the first bandwidth and the allocated second portion of the second bandwidth. Moreover, Red Hat's Linux products do not infringe the '343 patent at least because MPTCP does not "establish a connection by concurrently [using multiple bandwidths]" as required by the claims of the '343 patent.

66.     Red Hat's Linux products do not infringe the '156 patent at least because MPTCP does not determine "an optimum amount of bandwidth needed for an immediate data transfer needs of the requesting RCG" as required by the claims of the '156 patent. Moreover, Red Hat's Linux products do not determine which nearby RCG to contact based on, *e.g.*, "a distance and a number of hops between the RCGs and the requesting RCG" as required by the claims of the '156 patent.

67.     The APAA guidelines explicitly provide that "[a] court may consider [several] factors as evidence that a person has made a bad-faith assertion of patent infringement. *See* APAA, § 75-143(a). Several of the enumerated factors support a finding that CAS has made a bad-faith patent assertion in this case.

68.     First, under § 75-143(a)(1), bad-faith patent infringement can be found if "[t]he demand does not contain all of the following information" including "[f]actual allegations concerning the specific areas in which the target's products, services, and technology infringe the patent or are covered by specific, identified claims in the patent."

69.     Here, aside from the allegation that Red Hat "may already be using MPTCP protocol, or a proprietary method, in [its] Unix products," the Demand Letter contains no factual allegations concerning the specific areas in which Red Hat's products infringe the Asserted Patents. The Demand Letter does not list any specific, identified claims in the Asserted Patents.

70.     Accordingly, the factor enumerated in § 75-143(a)(1) supports a finding of bad-faith assertion of patent infringement by CAS.

71.     Second, under § 75-143(a)(2), bad-faith patent infringement can be found if "[p]rior to sending the demand, the person failed to conduct an analysis comparing the claims in the patent to the target's products, services, and technology, or the analysis was done but does not identify specific areas in which the products, services, and technology are covered by the claims in the patent."

72.     Here, CAS's Demand Letter was not accompanied by any claim charts and contained no analysis of Red Hat's alleged infringement. CAS failed to identify any infringing features of Red Hat's products with reasonable specificity. Indeed, CAS did not provide claim

charts for any of the patents until nearly eight months after sending its Demand Letter and, to date, has not provided claim charts supporting its infringement allegations for the majority of the patents it contends Red Hat infringes.

73. Further, CAS's Demand Letter named Red Hat's "Unix products."

74. Unix is an operating system originally developed at AT&T Bell Labs in 1969.

75. Red Hat does not produce or distribute Unix-based products. Instead, Red-Hat provides Linux-based offerings. While Linux and Unix share similarities, they are distinct operating systems.

76. Thus, CAS's accusation that "Your company may already be using MPTCP protocol, or a proprietary method, *in your Unix products*" underscores CAS's lack of investigation and analysis prior to sending its demand.

77. Additionally, despite Red Hat's repeated requests for claim charts, CAS did not provide any claim charts until June 2024, *nearly 8 months* after sending the initial Demand Letter.

78. CAS provided claim charts for *only three of the seven* Asserted Patents. To date, CAS has not provided any analysis for why Red Hat's products allegedly infringe the majority of the Asserted Patents.

79. Accordingly, CAS failed to conduct an analysis comparing the claims in the Asserted Patents to Red Hat's products when it initially sent its demand. As such, the factor enumerated in § 75-143(a)(2) supports a finding of bad-faith assertion of patent infringement by CAS.

80. Third, under § 75-143(a)(3), bad-faith patent infringement can be found if the "demand lacks the information described in subdivision (1) of this subsection, the target requests the information, and the person fails to provide the information within a reasonable period of time."

81.     Here, following the October 2023 demand, Red Hat requested that CAS provide supporting claim charts by mid-December.

82.     When it received no response from CAS, Red Hat followed up twice on its request for claim charts in January 2024 and March 2024.

83.     CAS did not provide claim charts until June 2024, **_nearly 8 months_** after sending the initial Demand Letter.

84.     Despite Red Hat's requests for information, CAS has not provided claim charts for four of the seven Asserted Patents.

85.     Accordingly, CAS failed to provide information supporting its infringement allegations within a reasonable period of time, even after several requests by Red Hat. Upon information and belief, CAS did not have claim charts against any Red Hat products when it made its allegations that Red Hat infringes its patents in October 2023. As such, the factor enumerated in § 75-143(a)(3) supports a finding of bad-faith assertion of patent infringement by CAS.

86.     Fourth, under § 75-143(a)(5), bad-faith patent infringement can be found if "the person offers to license the patent for an amount that is not based on a reasonable estimate of the value of the license, or the person offers to license the patent for an amount that is based on the cost of defending a potential or actual lawsuit."

87.     CAS's license demand, coupled with its failure to provide a proper infringement analysis or name **_any_** settlement sum, demonstrates that its offer to license the Asserted Patents is not based on a reasonable estimate of the value of the license.

88.     Accordingly, the factor enumerated in § 75-143(a)(5) supports a finding of bad-faith assertion of patent infringement by CAS.

89.     Fifth, under § 75-143(a)(6), bad-faith patent infringement can be found if "[t]he

claim or assertion of patent infringement is meritless, and the person knew or should have known that the claim or assertion is meritless…."

90. Here, as explained above, Red Hat's products cannot infringe any claim of the Asserted Patents because, among other reasons, the Asserted Patents are limited to Multilink PPP connections, which are distinct from the Multipath TCP or MPTCP standard.

91. Additionally, as explained above, CAS admitted that it charted the obsolete RFC 6824 standard in its infringement allegations.

92. Further, as explained above, CAS accused Red Hat's "Unix products" in its Demand Letter. A cursory investigation would have revealed that Red Hat does not produce or distribute Unix-based products.

93. The Unix operating system also pre-dates the Asserted Patents by several decades.

94. Further, as explained above, CAS did not provide any infringement contentions with its Demand Letter, and provided deficient claim charts as to only three of the seven Asserted Patents approximately eight months after making its demand.

95. CAS either knew, or pursuant to a reasonable analysis of Red Hat's products, should have known that their assertion against Red Hat was meritless, prior to sending the original Demand Letter in October 2023.

96. CAS was made aware by Red Hat that their assertion was meritless, yet CAS continues to demand payment from Red Hat.

97. Accordingly, the factor enumerated in § 75-143(a)(6) supports a finding of bad-faith assertion of patent infringement by CAS.

98. Additionally, under § 75-143(a)(7), bad-faith patent infringement can be found if "[t]he claim or assertion of patent infringement is deceptive."

99.     Here, for the reasons stated above, CAS should have known that their infringement theory was meritless, yet prepared and sent its Demand Letter (without any claim charts) in which CAS attempted to pass off the functionality of Red Hat's products as meeting the claim elements which CAS knew (or should have known) cannot be met.

100.     Accordingly, the factor enumerated in § 75-143(a)(7) supports a finding of bad-faith assertion of patent infringement by CAS.

101.     Further, CAS's attempt to leverage its baseless infringement threats to force Red Hat to enter into an asymmetrical NDA is further evidence of CAS's bad-faith and abusive patent assertion behavior.

102.     Additional discovery may also reveal that additional factors support a finding of CAS's bad-faith assertion of patent infringement including but not limited to factors (8), (9), and (10) of § 75-143(a).

## <u>FIRST COUNT</u>

### (Declaration of Non-Infringement of U.S. Patent No. 11,582,343)

103.     Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

104.     CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '343 patent. A true and correct copy of the '343 patent is attached hereto as Exhibit 1.

105.     In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '343 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

106.     A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default,

infringes or has infringed the '343 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '343 patent.

107.     Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '343 patent. In its infringement claim charts against Red Hat, CAS cites to MPTCP as purported evidence of infringement of claim 1 of the '343 patent. Based on Red Hat's present understanding of claim 1 of the '343 patent and CAS's allegations, RHEL fails to meet or embody the limitations of claim 1 of the '343 patent.

## <u>SECOND COUNT</u>

### (Declaration of Non-Infringement of U.S. Patent No. 11,418,641)

108.     Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

109.     CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '641 patent. A true and correct copy of the '641 patent is attached hereto as Exhibit 2.

110.     In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '641 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

111.     A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '641 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '641 patent.

112.     Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '641 patent. Based on Red Hat's present understanding the '641 patent and CAS's allegations, RHEL fails to meet or embody the claims of the '641 patent.

## THIRD COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 10,868,908)

113.    Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

114.    CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '908 patent. A true and correct copy of the '908 patent is attached hereto as Exhibit 3.

115.    In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '908 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

116.    A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '908 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '908 patent.

117.    Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '908 patent. Based on Red Hat's present understanding of the '908 patent and CAS's allegations, RHEL fails to meet or embody the claims of the '908 patent.

## FOURTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 9,350,649)

118.    Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

119.    CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '649 patent. A true and correct copy of the '649 patent is attached hereto as Exhibit 4.

120.     In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '649 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

121.     A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '649 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '649 patent.

122.     Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '649 patent. In its infringement claim charts against Red Hat, CAS cites to MPTCP as purported evidence of infringement of claims 13, 18, and 21 of the '649 patent. Based on Red Hat's present understanding of claims 13, 18, and 21 of the '649 patent and CAS's allegations, RHEL fails to meet or embody the limitations of claims 13, 18, and 21 of the '649 patent.

## FIFTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 8,861,349)

123.     Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

124.     CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '349 patent. A true and correct copy of the '349 patent is attached hereto as Exhibit 5.

125.     In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '349 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

126.     A substantial, immediate, and real controversy exists between Red Hat and CAS

regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '349 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '349 patent.

127.     Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '349 patent. In its infringement claim charts against Red Hat, CAS cites to MPTCP as purported evidence of infringement of claims 1–20 of the '349 patent. Based on Red Hat's present understanding of claims 1–20 of the '349 patent and CAS's allegations, RHEL fails to meet or embody the limitations of claims 1–20 of the '349 patent.

**SIXTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 8,228,801)**

128.     Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

129.     CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '801 patent. A true and correct copy of the '801 patent is attached hereto as Exhibit 6.

130.     In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '801 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

131.     A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '801 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '801 patent.

132.     Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '801 patent. Based on Red Hat's present understanding of the '801 patent

and CAS's allegations, RHEL fails to meet or embody the claims of the '801 patent.

## SEVENTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 7,606,156)

133.    Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

134.    CAS claims to own all rights, title, and interest, including the right to seek damages for past, present, and future infringement thereof, in the '156 patent. A true and correct copy of the '156 patent is attached hereto as Exhibit 7.

135.    In the case CAS has brought against Red Hat, CAS accuses Red Hat of infringing the '156 patent based on allegations that focus solely on MPTCP functionality it alleges is provided by Red Hat.

136.    A substantial, immediate, and real controversy exists between Red Hat and CAS regarding whether RHEL, which incorporates MPTCP as a function that is disabled by default, infringes or has infringed the '156 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '156 patent.

137.    Red Hat seeks a judgment declaring that RHEL does not directly or indirectly infringe any claim of the '156 patent. Based on Red Hat's present understanding of the '156 patent and CAS's allegations, RHEL fails to meet or embody the claims of the '156 patent.

## EIGHTH COUNT

### (Violation of the North Carolina Abusive Patent Assertion Act)

138.    Red Hat restates and incorporates by reference all allegations in this Verified Complaint as if fully set forth herein.

139.    CAS's assertion of patent infringement and licensing demands against Red Hat— as demonstrated in the Demand Letter, the limited claim charts, and during the Parties' telephonic

conferences and email correspondence—are both objectively baseless and subjectively made in bad faith.

140. For example, as evidenced by the Demand Letter itself and the limited, delayed claim charts, CAS failed to conduct a reasonable comparison of the claims of the Asserted Patents to Red Hat's products. Any reasonable investigation would have revealed that Red Hat's products do not infringe any valid and enforceable claim of the Asserted Patents. Yet CAS has continued to assert their meritless claims of infringement despite Red Hat's explanations of non-infringement. *See* N.C. Gen. Stat. §75-143(a)(1), (2), (3), (6), (7).

141. CAS's conduct, including its sending of the Demand Letter and threatening Red Hat with objectively baseless patent litigation constitutes abusive patent assertion in violation of the APAA.

142. CAS's conduct to date, including as evidenced by the Demand Letter and accompanying license demand, as well as CAS's demonstrated and admitted deficiencies in its infringement analyses and refusal to name a settlement amount demonstrate that CAS's licensing demand is not based on a reasonable estimate of the value of the Asserted Patents to Red Hat, but instead on the cost of defending a lawsuit. *See id*. §75-143(a)(5).

143. As a result of CAS's objectively baseless and subjectively bad-faith and abusive assertions that Red Hat's products infringe the Asserted Patents, Red Had has suffered and continues to suffer damages and incur costs, fees (including attorneys' fees), and other harm, all of which are recoverable under the North Carolina Abusive Patent Assertion Act. *See id.* §§ 75-145(b)(1)-(3).

144. In particular, by a result of CAS's acts as discussed above, Red Hat has been forced to divert resources to research, review, and investigate CAS's claims, as well as correspond with

attorneys and defend against the claims. These diversions by CAS fall squarely on CAS's bad acts and have caused a significant burden on and damages to Red Hat.

145.    Red Hat seeks both equitable relief enjoining CAS from continuing to assert the Asserted Patents against Red Hat, its customers, or its products as well as recovery of its damages, costs, and fees, together with an award of exemplary damages in an amount equal to $50,000 or three (3) times the total of damages, costs, and fees, whichever is greater. *See id.* §§ 75-145(b)(1)-(4).

146.    Red Hat also reserves right to file a motion requesting the Court require CAS to post a bond under § 75-144 "in an amount equal to a good-faith estimate of the [Red Hat's] fees and costs to litigate the claim and amounts reasonably likely to be recovered under § 75-145."

### PRAYER FOR RELIEF

WHEREFORE, Red Hat prays for judgment and relief as follows:

A.    Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '343 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '343 patent against Red Hat or any of its customers;

B.    Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '641 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '641 patent against Red Hat or any of its customers;

C.     Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '908 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '908 patent against Red Hat or any of its customers;

D.     Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '649 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '649 patent against Red Hat or any of its customers;

E.     Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '349 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '349 patent against Red Hat or any of its customers;

F.     Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '801 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '801 patent against Red Hat or any of its customers;

G.     Declaring that Red Hat's products, including RHEL, do not infringe directly or indirectly any claim of the '156 patent and enjoining CAS, its officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly

charging infringement, or instituting further action for infringement, of the '156 patent against Red Hat or any of its customers;

H.      Finding that this is an exceptional case under 35 U.S.C. § 285;

I.      Awarding Red Hat its costs and attorneys' fees in connection with this action;

J.      An order finding CAS's conduct to be in violation of the North Carolina Abusive Patent Assertion Act (N.C. Gen. Stat. § 75-140 *et seq*.) (the "APAA)" and awarding to Red Hat all remedies contemplated by the APAA, including but not limited to exemplary damages in an amount equal to $50,000 or three (3) times the total of all damages, costs, expenses, and fees (including attorneys' fees) incurred by Red Hat as a result of CAS's bad-faith assertion of patent infringement, together with all pre-judgment interest and post-judgment interest as provided by law, as well as equitable relief to estop CAS from continuing to assert the Asserted Patents against Red Hat; and

K.      Such further and additional relief as the Court deems just and proper.

L.      Red Hat also reserves right to file a motion requesting the Court require CAS to post a bond under § 75-144 "in an amount equal to a good-faith estimate of the [Red Hat's] fees and costs to litigate the claim and amounts reasonably likely to be recovered under § 75-145."

## **JURY DEMAND**

Red Hat demands a jury trial on all issues and claims so triable.

DATED: September 3, 2024

Respectfully submitted,

By: */s/ Richard T. Matthews*

Greg Arovas (*pro hac vice* forthcoming)
Todd M. Friedman (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
greg.arovas@kirkland.com
todd.friedman@kirkland.com

Brandon H. Brown (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
brandon.brown@kirkland.com

Richard T. Matthews (N.C. #32817)
Andrew R. Shores (N.C. #46600)
WILLIAMS MULLEN
P.O. Drawer 1000
Raleigh, NC 27602-1000
Telephone: +1 919 981 4000
rmatthews@williamsmullen.com
ashores@williamsmullen.com

Attorneys for Plaintiff RED HAT, INC.

## <u>VERIFICATION</u>

I, David B. Perry, declare as follows:

  I am the Director of Litigation and Intellectual Property of Red Hat, Inc. ("Plaintiff"). I have read Plaintiff's Complaint against Competitive Access Systems, Inc. I know the contents thereof to be true based on my own personal knowledge, except as to such matters therein based on my information and belief, and, as to such matters, I believe them to be true.

  Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of September, 2024.

            By: /s/ David B. Perry_____
             David B. Perry