**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| RED HAT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 5:24-cv-505-D-BM |
| v. | ) |
| | ) |
| COMPETITIVE ACCESS SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF RED HAT, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................... 3

    A.  The Parties .................................................................................................. 3

    B.  Communications Between CAS and Red Hat ............................................ 3

III. LEGAL STANDARDS ....................................................................................... 5

    A.  Rule 12(b)(2) Personal Jurisdiction .......................................................... 5

        1.  Specific Personal Jurisdiction .......................................................... 5

        2.  Special Jurisdiction Under the NC APAA ....................................... 6

    B.  Rule 12(b)(1) Subject Matter Jurisdiction ................................................ 6

        1.  Subject Matter Jurisdiction Under the Declaratory Judgment Act ............ 7

        2.  Diversity Jurisdiction ...................................................................... 7

    C.  Sufficiency of the Pleading Under Rule 12(b)(6) .................................... 7

    D.  Jurisdictional Discovery ............................................................................ 8

IV. ARGUMENT ....................................................................................................... 9

    A.  CAS's Forum-Related Activities Give Rise to Personal Jurisdiction .................... 9

        1.  CAS Purposely Availed Itself of the Privileges of Conducting Activities Within the Forum State. ........................................................... 9

            a.  CAS Misrepresents the Facts Surrounding Its Repeated Communications into North Carolina. ........................................... 10

            b.  CAS Misrepresents the Standards for Personal Jurisdiction ........ 12

        2.  CAS Cannot Satisfy Its Burden on the Third Personal Jurisdiction Factor. ............................................................................. 15

        3.  This Court Has Special Jurisdiction over CAS Under the NC APAA. .................................................................................... 17

    B.  This Court Has Subject Matter Jurisdiction over Red Hat's Claim. .................... 17

1. There Is an Actual Case or Controversy. .................................................... 18

    a.    CAS's Notice Letter Alone Creates a Case or Controversy. ........ 18

    b.    CAS Did Not Send Its Notice Letter Merely for Patent Marking Purposes. .......................................................................... 19

    c.    The Parties' Subsequent Communications Further Confirm There Is an Actual Case or Controversy. ..................................... 20

2. This Court Has Both Supplemental and Diversity Jurisdiction over the NC APAA Claim. .............................................................................. 21

C.    Red Hat's Complaint Properly States a Claim Under the NC APAA. ................. 22

D.    Should the Court Find any Deficiency in Red Hat's Pleading, Red Hat Requests Leave to Conduct Jurisdictional Discovery. ........................................... 24

E.    In the Event any Cause of Action Is Dismissed, the Court Should Grant Red Hat Leave to Amend Its Complaint. ................................................................. 25

V.    CONCLUSION ................................................................................................................ 26

## I.   INTRODUCTION

Defendant Competitive Access Systems, Inc.'s ("CAS") Motion to Dismiss [DE 15] would have this Court believe that the October 2, 2023 Notice Letter CAS sent to Plaintiff Red Hat, Inc. ("Red Hat") was a notice sent "solely to comply with 35 U.S.C. § 287's intellectual property marking requirements." [DE 15, at 2]. In fact, in its Notice Letter, CAS identified its patents (including the seven patents-in-suit[1]), asserted they cover a Multipath Transmission Protocol ("MPTCP") that "[y]our company may already be using," explained "CAS is providing notice about its patents to your company **with the intention of licensing** its patent portfolio to your company," and referenced a litigation settlement "with a major U.S. company in case number 2:22-cv-287 (Texas)."[2] [DE 1-10]. CAS's argument that it was simply satisfying the statutory marking requirement—not making a demand against Red Hat—defies the plain language of its Notice Letter and basic logic. Section 287 requires patent holders such as CAS to mark their—and their licensees'—products that practice the patented technology. Nowhere, however, does CAS's Notice Letter or Motion state that it makes any products, or has licensees that make practicing products. Further, **CAS's Notice Letter never even mentioned Section 287 or marking**. Plainly put, there was no reason for CAS to give Red Hat notice of its patents via that letter—except in anticipation of litigation.

Moreover, CAS's follow-up communications with Red Hat—which included providing claim charts alleging patent infringement and expressly refusing to withdraw infringement assertions—confirm there was an actual case or controversy. Indeed, while CAS disputes that it

---

[1] U.S. Pat. Nos. 11,582,343, 11,418,641, 10,868,908, 9,350,649, 8,861,349, 8,228,801, and 7,606,156 (collectively, the "Asserted Patents").

[2] All emphases are added unless otherwise noted.

ever asserted Red Hat infringes the Asserted Patents, its representations to this Court fall flat in view of its June 2024 statements that CAS's "***patent assertions against Red Hat*** have merit" and that "***CAS is not withdrawing any paetnt [sic] assertions*** at this time." Ex. 1 at 1. Moreover, if—as CAS claims—the Notice Letter were purely for Section 287 marking purposes, CAS would not have continued to press its infringement claim and engage in communications. CAS's current, post-filing statements to the contrary—supported only by an attorney's declaration—are thus insufficient to contravene properly-pleaded facts regarding jurisdiction and standing.

With respect to personal jurisdiction, Red Hat adequately pleaded that CAS purposefully directed repeated and sustained patent licensing communications to Red Hat in North Carolina, which is sufficient. *See* [DE 1 ¶¶ 35–36, 39–47]. While CAS contends that its Notice Letter is insufficient to support jurisdiction, its argument rests on stale case law that the Supreme Court and the Federal Circuit both have rejected and also ignores CAS's subsequent licensing communications directed at this forum. Moreover, CAS's Motion does not even address the special jurisdiction conferred by the North Carolina Abusive Patent Assertions Act (the "NC APAA").

Regarding subject matter jurisdiction, Red Hat has adequately pleaded that CAS sent Red Hat a Notice Letter declaring its "***intention of licensing*** its patent portfolio to your company." [DE 1-10]. That communication alone is sufficient to establish an actual controversy within the meaning of the Declaratory Judgment Act. CAS's follow-up communications, including expressly alleging infringement and seeking Red Hat enter into an asymmetrical NDA and tolling agreement giving CAS the unilateral ability to enforce at its discretion, only bolster that conclusion.

Finally, as to Red Hat's NC APAA claim, Red Hat has properly pleaded that CAS's actions amounted to a bad-faith assertion of patent infringement under the statutory factors. CAS's arguments that its licensing efforts were not made in bad faith are of no moment, because at the

pleading stage, the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 n.9 (4th Cir. 2009).

Given the robust facts pleaded in Red Hat's verified Complaint, Red Hat respectfully asks this Court to deny CAS's Motion, as: (1) the Court has personal jurisdiction over CAS; (2) the Court has subject matter jurisdiction over this action; and (3) Red Hat has sufficiently pleaded an NC APAA claim. To the extent the Court finds Red Hat's pleading is somehow inadequate, Red Hat requests leave to conduct jurisdictional discovery, and/or leave to amend its Complaint.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Red Hat is a well-known company that provides open-source software products, including Linux products, to enterprise customers. [DE 1 ¶ 9]. Red Hat developed Red Hat Enterprise Linux ("RHEL"), one of the most widely used Linux distributions in the enterprise market. *Id.* ¶ 28. Red Hat is a North Carolina corporation that employs over 2,000 employees in the State of North Carolina, has a principal place of business in Raleigh, North Carolina, and has offices in Charlotte and Durham. *Id.* ¶¶ 9, 23. Red Hat's products accused of infringement were developed, in part, in North Carolina, and many of Red Hat's customers also are based in North Carolina. *Id.* ¶ 23.

CAS is a Texas corporation founded by Eric DeLangis, the sole named inventor of the Asserted Patents. *Id.* ¶ 10. CAS does not manufacture or commercialize any product or service covered by the Asserted Patents. *Id.* ¶ 11. CAS's business model is predominantly directed to monetizing its patents through licensing. *Id.*

### B.     Communications Between CAS and Red Hat

On October 2, 2023, CAS sent a letter addressed to Red Hat's headquarters in Raleigh, North Carolina. [DE 1 ¶¶ 29, 35]; [DE 1-10]. CAS's letter: (1) identified the Asserted Patents,

which CAS stated it owns; (2) asserted those patents cover MPTCP; (3) noted that "[y]our company may ***already be using*** MPTCP protocol"; (4) stated CAS was "providing notice . . . with the intention of ***licensing its patent portfolio*** to your company"; and (5) identified that "[r]ecently, CAS ***settled*** with a major U.S. company in case number 2:22-cv-287 (Texas)." [DE 1-10]; *see also* [DE 1 ¶¶ 33–34].

Following CAS's Notice Letter, CAS and Red Hat communicated on at least five separate occasions, including a teleconference that CAS initiated on June 6, 2024. [DE 1 ¶ 38]; Ex. 1 at 2. Acting on CAS's behalf, Mr. Clay McGurk directed communications to Red Hat's in-house attorney based in North Carolina. [DE 1 ¶¶ 40–41]. The parties' communications included a request from Red Hat for claim charts (*i.e.*, charts identifying, on an element-by-element basis, how a patentee believes an accused product infringes a patent claim) in accordance with N.C. Gen. Stat. § 75-143(a)(3). Ex. 1 at 3.[3] CAS sent claim charts to Red Hat for three of the seven Asserted Patents on June 18, 2024. [DE 1 ¶ 47]. In the same email, CAS stated that its "***patent assertions against Red Hat*** have merit," that CAS's patented methods "are ***in use*** by Red Hat," and that "CAS is ***not withdrawing any paetnt [sic] assertions*** at this time." Ex. 1 at 1. CAS and Red Hat subsequently had a teleconference on August 27, 2024, during which CAS maintained its infringement position and demanded Red Hat make a settlement offer. [DE 1 ¶¶ 54–55]. CAS also demanded that Red Hat enter into an asymmetrical NDA and tolling agreement. *See* Ex. 4. This agreement purported to give CAS the unilateral ability to enforce its rights, at its discretion. *See id.* at 4 ("No Litigation. . . . CAS shall have a period of six (6) months ('Term') to file any lawsuit against Red Hat."). The agreement further sought Red Hat to agree not to take any action regarding

---

[3] "The court may . . . consider documents referred to in and explicitly relied upon in a complaint, so long as the parties do not challenge the authenticity of the document." *Benzing v. Tharrington-Smith, LLP*, No. 5:10-CV-533-F, at *2 n.1 (E.D.N.C. Jan. 19, 2012) (citation omitted).

CAS's infringement allegation. *See id.* at 1 ("No Litigation. . . . Red Hat cannot file any lawsuit against CAS during the Term."); [DE 1 ¶ 56].

## III.   LEGAL STANDARDS

### A.    Rule 12(b)(2) Personal Jurisdiction

Federal Circuit law applies to the question of personal jurisdiction in patent cases. *See, e.g.*, *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998); *Celgard, LLC v. LG Chem, Ltd.*, No. 14 Civ. 00043-MOC-DC, 2015 WL 2412467, at *17 n.3 (W.D.N.C. May 21, 2015); *Carolina Archery Prod., Inc. v. Alpine Archery Inc.*, No. 03 Civ. 00176-LWF, 2004 WL 1368863, at *2 (M.D.N.C. June 15, 2004).

When "the court rules on a 12(b)(2) motion relying on the Complaint, briefs, and affidavits, without conducting an evidentiary hearing," the plaintiff need only "make a *prima facie* showing that personal jurisdiction exists." *Carolina Archery*, 2004 WL 1368863, at *2; *see also Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). "In determining whether Plaintiff has made the requisite showing upon a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Celgard*, 2015 WL 2412467, at *16.

#### 1.    Specific Personal Jurisdiction

Specific personal jurisdiction is proper when the Federal Circuit's three-factor test[4] is satisfied: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities directed within the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Xilinx*, 848 F.3d at 1353;

---

[4] A federal court may exercise personal jurisdiction to the extent allowed by the state in which the federal court sits. FED. R. CIV. P. 4(e)(1), (h)(1)(A), (k)(1)(A).

*see also Carolina Archery*, 2004 WL 1368863, at *3. "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Xilinx*, 848 F.3d at 1353 (internal citation and quotation marks omitted). "Plaintiff has the burden of making a *prima facie* showing of specific jurisdiction by satisfying the first two elements; the burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair." *Celgard*, 2015 WL 2412467, at *18.

## 2. Special Jurisdiction Under the NC APAA

The NC APAA states that it "shall be construed as *a special jurisdiction statute*." N.C. Gen. Stat. § 75-145(e). Further, "any person who has delivered or sent, or caused another to deliver or send, a demand to a target in North Carolina has purposefully availed himself or herself of the privileges of conducting business in this State and *shall be subject to suit in this State*", whether or not the person is transacting or has transacted any other business in this State." *Id.*; *see also Schaefer Sys. Int'l, Inc. v. Aloft Media, LLC*, No. 22 Civ. 00051-3KDB-DCK, 2023 WL 4055712, at *6 (W.D.N.C. June 16, 2023).

## B. Rule 12(b)(1) Subject Matter Jurisdiction

A court should grant a Rule 12(b)(1) motion to dismiss only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Pond v. United States*, 69 F.4th 155, 168 (4th Cir. 2023) (internal citations and quotations omitted). If the plaintiff can demonstrate that even *a single material fact* is in dispute, the court must deny the motion to dismiss. *See McCallum v. Billy Graham Evangelistic Ass'n*, No. 09 Civ. 00381-RLV, 2012 WL 4756061, at *5 (W.D.N.C. Oct. 5, 2012). Evidence outside the pleadings may be considered. *N.C. A. Philip Randolph Inst. v. N.C. State Bd. of Elections*, No. 20 Civ. 00876, 2022 WL 446833, at *5 (M.D.N.C. Feb. 14, 2022), *report and recommendation adopted*, No. 20 Civ.

00876, 2022 WL 903114 (M.D.N.C. Mar. 28, 2022); *see also Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### 1. Subject Matter Jurisdiction Under the Declaratory Judgment Act

Federal Circuit law governs whether an actual case or controversy exists. *Wonderland Switzerland AG v. Britax Child Safety, Inc.*, No. 19 Civ. 02475-JMC, 2020 WL 6365382, at *2 (D.S.C. Oct. 29, 2020) (citation omitted). In place of the previous "reasonable threat of imminent suit" test for declaratory judgment jurisdiction, the new, more relaxed standard merely requires that "the facts alleged under ***all the circumstances,*** show that there is a substantial controversy between parties having ***adverse legal interests,*** of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). The determination requires "an examination of the totality of the circumstances[.]" *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330–31 (Fed. Cir. 2014) (citation omitted). "Article III does ***not*** mandate that the declaratory judgment defendant have threatened litigation or otherwise taken action to enforce its rights before a justiciable controversy can arise." *Id.* at 1330. Rather, courts require only that "a declaratory judgment plaintiff . . . allege an affirmative act by the patentee relating to the enforcement of his patent rights." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

### 2. Diversity Jurisdiction

Diversity jurisdiction exists where: (1) the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The pleaded amount in controversy must be accepted if it is made in good faith. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *see also Glynn v. SavaSeniorCare Consulting, LLC*, No. 20 Civ. 00193-FL, 2021 WL 647373, at *3 (E.D.N.C. Jan. 28, 2021) (citation omitted).

### C. Sufficiency of the Pleading Under Rule 12(b)(6)

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To state a claim under the NC APAA, the plaintiff "must allege those elements required by the Act itself, namely that they are a target or person aggrieved by a violation of the Act." *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 205 (M.D.N.C. 2021). "[S]omeone is aggrieved under the Act when he receives a bad faith assertion of patent infringement and as a result expends funds investigating or defending himself from the claim or paying a licensing fee despite the claim being meritless." *Id.* at 206. Further, "each of the [nineteen] enumerated factors is only a potential consideration to be weighed in the context of the totality of the evidence." *Schaefer Sys.*, 2023 WL 4055712, at *7 (citing N.C. Gen. Stat. §§ 75-141, 75-143 (a)–(b)).

### D.    Jurisdictional Discovery

District Courts have broad discretion to allow jurisdictional discovery. *See Celgard, LLC v. SK Innovation Co., LTD.*, No. 13 Civ. 00254-MOC, 2013 WL 7088637, at *6 (W.D.N.C. Nov. 26, 2013) (citation omitted). Courts allow jurisdictional discovery where "jurisdictional facts are disputed" and can "be easily clarified through limited discovery." *Id.*; *see also Williams v. Sig Sauer, Inc.*, No. 22 Civ. 00048-D, 2022 WL 10145802, at *2 (E.D.N.C. Oct. 17, 2022); *Yacht Basin Provision Co. v. Hot Fish Club, LLC*, No. 21 Civ. 00117-FL, 2021 WL 6493858, at *2–3 (E.D.N.C. Dec. 13, 2021). Courts similarly allow targeted discovery for standing disputes. *See Adkins v. Rumsfeld*, 470 F. Supp. 2d 445, 448 (D. Del. 2007).

## IV.    ARGUMENT

CAS's Motion should be denied because Red Hat's Complaint adequately pleads that: (1) this Court has specific personal jurisdiction and, in the alternative, special jurisdiction over CAS; (2) CAS's communications with Red Hat establish an actual case or controversy; and (3) Red Hat is entitled to relief under the NC APAA.

### A.    CAS's Forum-Related Activities Give Rise to Personal Jurisdiction.

The allegations in Red Hat's Complaint more than meet the *prima facie* standard for satisfying the Federal Circuit's three-factor test: (1) CAS purposely directed its activities at Red Hat by communicating that Red Hat infringes the Asserted Patents and attempting to extract a license; (2) Red Hat's causes of action arise from CAS's interactions with the forum, *e.g.*, CAS's Notice Letter and subsequent communications directed to North Carolina; and (3) asserting personal jurisdiction over CAS would be fair because CAS directed its case-related actions into North Carolina—and CAS has not met its burden to show otherwise. *See, e.g.*, [DE 1 ¶¶ 17–19]; *Xilinx,* 848 F.3d at 1353. This Court also has special jurisdiction over CAS under the NC APAA. *See* NC Gen. Stat. §75-145(e).

### 1.    CAS Purposely Availed Itself of the Privileges of Conducting Activities Within the Forum State.

CAS's activities are exactly the types of activities that subject CAS to specific jurisdiction in this district. As a patent-assertion entity, CAS's activities predominantly involve asserting its patents to obtain licensing fees. *See* [DE 1 ¶ 11]. As Red Hat properly alleged, CAS specifically directed those activities toward a North Carolina company by initiating licensing discussions and then **repeatedly** telling Red Hat that Red Hat infringes the Asserted Patents. Such "communications threatening suit or proposing settlement or patent licenses can be sufficient to

establish personal jurisdiction." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021).

> a. CAS Misrepresents the Facts Surrounding Its Repeated Communications into North Carolina.

CAS's response seeks to downplay its activities in the forum and rewrite history by contending its lengthy campaign of allegations merely amounted to "informing the recipient of [CAS's] patents," not "assert[ing] patent infringement." [DE 15, at 8, 12, 17]. These arguments are factually incorrect and easily disproven by the record. Moreover, they are irrelevant as a matter of law.

CAS's communications with Red Hat entailed far more than mere "notice" of its patent rights. [DE 15, at 7]. CAS contends that "[n]owhere in the Notice Letter does CAS accuse Red Hat of patent infringement, threaten litigation, or demand that Red Hat take a license to the patents identified in the Notice Letter." *Id.* at 2. Yet, a plain reading of the letter confirms otherwise: CAS expressly states that if Red Hat uses MPTCP—or another proprietary method—then Red Hat would be infringing CAS's patents because those patents allegedly "cover MPTCP . . . ." [DE 1-10]. Further, the Notice Letter expressly states that CAS was "providing notice . . . **with the intention of licensing its patent portfolio to your company**" and demanded that Red Hat contact CAS "right away" to "discuss licensing opportunities." *Id.* Far from a notice to comply with marking requirements, [DE 15, at 2]—which the letter does not reference at all—CAS's Notice Letter was plainly intended to assert infringement and receive a license "right away," [DE 1-10].[5]

---

[5] CAS's contention that the Notice Letter was necessary to comply with Section 287 is nonsense. Section 287 requires affirmatively marking either the patentee's own products or those that are already licensed—nothing more. CAS does not contend it makes products and so has no duty to mark. Red Hat is not a licensee and thus need not mark.

CAS's subsequent correspondence (which it recognizes is at issue, but merely characterizes as "sporadic," [DE 15, at 9])—leaves no doubt that CAS asserted infringement. In early June 2024, CAS informed Red Hat that it was "finalizing claim charts alleging that **Red Hat infringes** some of CAS' patents." Ex. 1 at 2. CAS provided those charts two weeks later, contending that CAS's "**patent assertions against Red Hat** have merit," and that the "patent portfolio of CAS covers MPTCP methods … **that are in use by Red Hat**." Ex. 1 at 1. CAS even confirmed that CAS "is not withdrawing any **paetnt [sic] assertions** at this time." *Id*. Further, despite CAS's allegations that "Red Hat initiated all of the[] communications," [DE 15, at 1], the record confirms that **CAS** initiated the communications via its October 2, 2023 letter, following which Red Hat sought additional information (including that which should have been sent in CAS's initial demand [DE 1 ¶ 31]), and then communications continued in light of CAS's express refusal to withdraw its infringement allegations. *See* Ex. 1 at 1.

CAS tries to downplay these communications because its actual level of communication and engagement is **far more** than is required to establish specific personal jurisdiction. Notably, "[b]ased on the clear principles set out in Supreme Court jurisprudence, a defendant's "negotiation efforts, although accomplished through telephone and mail from [outside the forum], can still be considered as activities 'purposefully directed' at residents of the forum." *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1205 (Fed. Cir. 2018) (citation omitted); *see also Trimble*, 997 F.3d at 1155 ("the Supreme Court has held that communications sent into a state may create specific personal jurisdiction"); *Xilinx*, 848 F.3d at 1354 (physical entry by "**mail, or some other means**" is relevant contact") (citation omitted). Indeed, the Federal Circuit has found the minimum contacts prong of the specific jurisdiction analysis satisfied based on **communications virtually identical** to those here. *See Jack Henry*, 910 F.3d at 1201–02, 1206

(defendant sent letter identifying patents, invited non-exclusive licenses, identified alleged infringers, listed recent lawsuits, and attached claim charts); *PopSockets LLC v. Flygrip, Inc.*, No. 21 Civ. 02900, 2022 WL 17547954, at *8 (D. Colo. Oct. 27, 2022) (similar). There can be no doubt that Red Hat's declaratory judgment claims arise out of CAS's repeated infringement communications directed to Red Hat in North Carolina. Red Hat now seeks a declaratory judgment to clear the cloud that CAS has placed over Red Hat and its customers in this forum. "[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1293 (Fed. Cir. 2008). Indeed, Red Hat should be able to obtain relief from CAS's scarecrow patent assertions. Ex. 1 at 1. *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336 n.2 (Fed. Cir. 2007).

> b.     CAS Misrepresents the Standards for Personal Jurisdiction.

CAS's arguments fail to undermine Red Hat's *prima facie* showing of personal jurisdiction. ***First***, CAS argues that its Notice Letter is legally insufficient to support specific jurisdiction. [DE 15, at 7–8]. However, CAS's argument is based on an incorrect legal proposition that both the Supreme Court and the Federal Circuit have rejected. Specifically, CAS relies on *Red Wing* to argue that "courts correctly recognize that the mere sending of a letter designed to inform the recipient of the sender's patent rights is insufficient to support specific jurisdiction." [DE 15, at 7–8] (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359–61 (Fed. Cir. 1998)). However, the Federal Circuit has since "clarified the scope of *Red Wing*" and expressly stated "there is no general rule that demand letters can never create specific personal jurisdiction." *Trimble*, 997 F.3d at 1154, 1156; *see also Jack Henry*, 910 F.3d at 1206 (*Red Wing* "did not

create . . . a rule" that "patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action").[6]

The Federal Circuit has rejected *Red Wing*'s imposition of a specific personal jurisdiction analysis special to patent cases. *See also Trimble*, 997 F.3d at 1154 ("Supreme Court cases following *Red Wing* have made clear that the analysis of personal jurisdiction ***cannot*** rest on special patent policies . . . ."). Because "[p]ersonal jurisdiction is not an area in which Congress has enacted a patent-specific statute . . . Supreme Court precedent assures that *Red Wing* cannot rest on special considerations unique to patent cases." *Id.* at 1154–55. Similarly, Judge Stohl noted in her concurrence in *Jack Henry* that *Red Wing* and its progeny failed to address the relevant factors and thus should "be reconsidered as directly contrary to established Supreme Court precedent." *Jack Henry*, 910 F.3d at 1207 (Stohl, J., concurring). CAS's reliance on *MISYS*—a case derived from *Red Wing* and its progeny—is also misplaced. *See MISYS Healthcare Sys., LLC v. Billingnetwork, Inc.*, No. 07 Civ. 00080-FL(3), 2007 WL 9718500, at *1 (E.D.N.C. Oct. 30, 2007). Hence, CAS's argument that "fundamental fairness under the Due Process Clause entitles CAS to inform others about both its patent rights and the opportunity to license those rights without fear of being hailed into [this] forum," [DE 15, at 8], fails because it relies on a consistently rejected legal principle. Contrary to CAS's assertion, it is well-established that licensing communications can support personal jurisdiction. *See Trimble*, 997 F.3d at 1155; *Juniper Networks Inc., v. Swarm Tech. LLC*, No. 20 Civ. 03137-JD, 2021 WL 6049924, at *2 (N.D. Cal. Dec. 21, 2021); *PopSockets*

---

[6] Even if CAS had accurately characterized *Red Wing*, it would not apply because *Red Wing* clarified that the patent-owner's "three letters ***alone*** do not create personal jurisdiction in Minnesota." *Red Wing*, 148 F.3d at 1361. Here, CAS did far more than send its Notice Letter. *See* II.B, *infra*.

*LLC v. Flygrip, Inc.*, No. 21 Civ. 02900-RM-STV, 2022 WL 17729705, at *1–3 (D. Colo. Dec. 16, 2022).[7]

**Second**, CAS argues "a handful of email communications, phone calls, and video conferences . . . over a period of nearly 9 months is not enough to support personal jurisdiction." [DE 15, at 9]. Yet, CAS's own cited authority confirms "[t]he specific jurisdiction analysis does not require a specific number of contacts with the forum, and instead, courts consider the **qualitative nature of each of the defendant's connections** to the forum state." *BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d 696, 701 (W.D.N.C. 2015) (internal quotes and citation omitted). Indeed, "[t]his test is so flexible that **one act or contact** within the forum state may be enough . . . ." *Id.* Moreover, CAS conveniently ignores the additional pleaded communications, which confirm that CAS did, in fact, attach claim charts and refused to "**withdraw[] any paetnt [sic] assertions** . . . ." *See* Ex. 1 at 1. CAS could hardly have refused to "withdraw" its patent assertions, had they not already been made.

The cases CAS cites are inapposite. The court in *Zhang v. United Health Grp., Inc.*, No. 23 Civ. 00194-KDB-SCR, 2024 WL 3576456, at *8 (W.D.N.C. June 28, 2024) (cited in [DE 15, at 9]), declined to exercise jurisdiction because all relevant facts had occurred in Minnesota before the defendant moved to North Carolina. Here, Red Hat has been a citizen of North Carolina throughout CAS's relevant conduct, and CAS's contacts far surpass mere email communications. CAS's reliance on *Atl. Corp. of Wilmington v. TBG Tech Co.*, 565 F. Supp. 3d 748, 751–59 (E.D.N.C. 2021) (cited in [DE 15, at 9]), is similarly misplaced, because the communications there

---

[7] CAS's argument also fails because it improperly divorces CAS's Notice Letter from the subsequent communications. *See Turn & Bank Holdings, LLC v. Avco Corp.*, No. 19 Civ. 00503-CCE, 2019 WL 3944475, at *8 (M.D.N.C. Aug. 21, 2019) (citations omitted).

were one-off purchase orders, *see id.* at 762–63, not a patent Notice Letter followed by claim charts and repeated negotiations.

### 2. CAS Cannot Satisfy Its Burden on the Third Personal Jurisdiction Factor.

CAS has presented no argument whatsoever, much less a compelling one, why exercising personal jurisdiction would be unreasonable—especially as CAS knew all along that Red Hat is located in North Carolina. *See, e.g.*, [DE 1-10]; *see also* [DE 1 ¶¶ 35–36, 40–41]. "[D]epending on the nature and scope of communications," "[a]n entity that repeatedly sends communications into a forum state clearly has fair warning that [the entity's] activity may subject [it] to the jurisdiction of a foreign sovereign." *Trimble*, 997 F.3d at 1155 (internal quotation omitted). Given the substance of CAS's communications—including claim charts and a refusal to withdraw its patent assertions—exercising jurisdiction over CAS is more than fair. *See Xilinx*, 848 F.3d at 1356; *see also Celgard*, 2015 WL 2412467, at *18.

CAS's Motion fails to address the five considerations the Supreme Court has identified as relevant to whether the exercise of jurisdiction comports with fair play and substantial justice. *See Trimble*, 997 F.3d at 1153–57 (citations omitted). Nor could CAS do so successfully here: "these cases [in which jurisdiction was improper] are limited to the ***rare situation*** in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are ***so attenuated*** that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568. CAS cannot show that this is one of those rare situations, particularly where: (1) under the Supreme Court's second consideration, North Carolina has an interest "in adjudicating claims arising out of North Carolina law and relating to wrongs against a North Carolina citizen," *Celgard*, 2015 WL 2412467, at *21; (2) under the fifth consideration, no conflict exist among several states because "the same body of federal patent law would govern the

patent invalidity claim irrespective of the forum," *Xilinx*, 848 F.3d at 1356; and (3) under the fourth consideration, "there is nothing preventing the parties from reaching a settlement while this case is pending in [this Court]," *Trimble*, 997 F.3d at 1159.

Moreover, under the third consideration, Red Hat has a strong "interest in protecting itself from patent infringement . . . in its home forum," because North Carolina "is where [Red Hat's] most relevant employees and documents are located." *Id.* at 1158. CAS's demand that Red Hat enter into a self-serving, asymmetrical NDA and tolling agreement that would have given CAS the unilateral ability to enforce CAS's patents at its discretion, while preventing Red Hat from taking any action to defend itself, [DE 1 ¶ 56]; Ex. 4, weighs particularly strongly against any finding that jurisdiction over CAS would be unfair. After accusing Red Hat of patent infringement, CAS should not be permitted to decide unilaterally how and where the dispute is adjudicated. Moreover, CAS's attempt to prevent Red Hat from challenging CAS's infringement allegations amounts to a tacit acknowledgment that Red Hat had the right to do so.

Notably, CAS has identified no burden it would face from litigating in this forum. *See Bourne v. McNealy-Minor*, No. 19 Civ. 00236-CV-236-FL, 2020 WL 1491549, at *5 (E.D.N.C. Mar. 27, 2020) (litigating "in North Carolina does not put defendant at a severe disadvantage" given modern transportation) (internal quotation omitted). Ultimately, "[d]espite bearing the burden on this issue, [CAS] has failed to identify any considerations which would render the exercise of personal jurisdiction unfair or unreasonable in this case." *i play. inc. v. D. Catton Enter., LLC*, No. 12 Civ. 00022-MR, 2013 WL 1196591, at *9 (W.D.N.C. Mar. 25, 2013).

### 3. This Court Has Special Jurisdiction over CAS Under the NC APAA.

Red Hat's Complaint also properly pleads that CAS is subject to personal jurisdiction in this Court under the NC APAA.[8] The NC APAA is a "special jurisdiction" statute that "directly addresses the issue of North Carolina's jurisdiction over out-of-state defendants accused of violating the statute." *Schaefer Sys.*, 2023 WL 4055712, at *6; *see also* NC Gen. Stat. §75-145(e) ("This Article **shall be construed as a special jurisdiction statute** in accordance with G.S. 1-75.4(2)"). Further, "any person who has delivered or sent . . . a demand to a target in North Carolina has purposefully availed himself or herself of the privileges of conducting business in this State and shall be **subject to suit** in this State . . . ." N.C. Gen. Stat. §75-145(e).

Here, Red Hat, a North Carolina corporation, received CAS's Notice Letter and subsequent communications regarding patent infringement. [DE 1 ¶¶ 4, 38]; [DE 1-10]. These communications qualify as a "demand" under the NC APAA. *See* N.C. Gen. Stat. Ann. § 75-142(2) ("Demand. – A letter, e-mail, or other communication asserting or claiming that a target has engaged in patent infringement or should obtain a license to a patent."). Thus, this Court has special jurisdiction over CAS.

### B. This Court Has Subject Matter Jurisdiction over Red Hat's Claim.

Red Hat's Complaint also sufficiently pleads subject matter jurisdiction by alleging: (1) an actual case or controversy sufficient to satisfy Article III standing based on CAS's patent infringement allegations and licensing demands; and (2) sufficient bases for both supplemental and diversity jurisdiction.

---

[8] CAS disputes only that the NC APAA confers original jurisdiction. *See* [DE 15, at 14].

### 1. There Is an Actual Case or Controversy.

#### a. CAS's Notice Letter Alone Creates a Case or Controversy.

CAS's October 2, 2023 Notice Letter alone is sufficient to demonstrate the existence of a case or controversy. When a defendant demands a license—as CAS did—and the plaintiff contends no license is needed, "there is an actual controversy between the parties within the meaning of the Declaratory Judgment Act." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1286 (Fed. Cir. 2007) ("silen[ce] regarding the possibility of litigation" immaterial); *see also 3M Co.*, 673 F.3d at 1375, 1380.

CAS's reliance on *InVue Sec. Prod., Inc. v. Merch. Techs., Inc.*, No. 12 Civ. 00088-RJC-DSC, 2012 WL 2577452 (W.D.N.C. July 3, 2012) is misplaced. *See* [DE 15, at 12–13]. There, the patentee's statement "let us know specifically what differences exist between [plaintiff's] products and the patented technology" amounted to a mere "proffer of and request for information" that did "not establish an adverse legal position." *InVue Sec. Prod., Inc.*, 2012 WL 2577452, at *1–3. In contrast, CAS explicitly stated its adverse legal position, telling Red Hat that "[y]our company may *already be using MPTCP*[,]" declaring CAS's *intention of licensing*" its patent portfolio, and asking Red Hat to contact CAS right away. [DE 1-10]. The subject matter jurisdiction inquiry should end here.

CAS argues that because certain words were not used, the communications were "non-litigious" and thus "insufficient to generate a case or controversy." [DE 15, at 13]. Specifically, CAS argues it never stated Red Hat was infringing, demanded a license, or threatened Red Hat with litigation. *Id.* at 11. However, CAS's argument runs contrary to black-letter law that a "[d]eclaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009); *see also Int'l Dev. Corp. v. Richmond*, No. 09 Civ.

02495, 2009 WL 3818141, at *5 (D.N.J. Nov. 13, 2009); *ABB Inc. v. Cooper Indus.*, *LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("specific threat of infringement litigation" not required).

Similarly, CAS's argument that there is no case or controversy because it never demanded a license strains credulity. *See* [DE 15, at 13]. Unlike in *Geospan Corp. v. Pictometry Int'l Corp.*, CAS's demand was not merely "a means of gathering information regarding potential infringement"; rather, CAS stated that Red Hat's products are "covered" by CAS's patents and the parties should discuss "licensing" immediately. [DE 15, at 13] (citing 598 F. Supp. 2d 968 (D. Minn. 2008)). Moreover, unlike the patentee in *InVue*, which did not ask for any payment, CAS's subsequent demands that Red Hat purchase a license or pay settlement fees further confirm an actual controversy exists. [DE 1 ¶ 38]; Ex. 1.

CAS's reliance on *Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*, No. 05 Civ. 00931, 2008 WL 345849, at *1 (D. Utah Feb. 6, 2008), *dismissed*, 311 F. App'x 360 (Fed. Cir. 2008), is similarly misplaced, because there, the letters merely notified the plaintiff of issued and pending patents. Here, CAS declared its "***intention of licensing***" to Red Hat and refused to withdraw its patent assertion.[9]

> b.      CAS Did Not Send Its Notice Letter Merely for Patent Marking Purposes.

CAS argues that notwithstanding its Notice Letter, it "never in fact asserted that Red Hat was infringing on the Asserted Patents." [DE 15, at 11]. CAS relies on Mr. McGurk, who claims he sent the Notice Letter to Red Hat "***at litigation counsel's direction*** . . . solely to comply with 35 U.S.C. § 287(a)'s intellectual property marking requirements," [DE 16 ¶¶ 9–10] and "for no

---

[9] In *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008), the court found an actual controversy where the patentee sent a license demand and referenced litigation against plaintiff's competitors. *See id.* at 899. Here, CAS's letter announced CAS recently "***settled with a major U.S. company in case number 2:22-cv-287*** (Texas)." [DE 1-10].

other purpose." [DE 15, at 13]. Yet, CAS's Notice Letter ***never*** referenced Section 287 or marking, nor identified any practicing product. CAS's argument is also contradicted by its licensing request and subsequent reaffirmations of patent assertion. Ex. 1 at 1.

CAS's argument also fails for the independent reason that Section 287 sets forth notice requirements for collecting ***pre-suit*** damages. Because a patentee cannot recover pre-suit damages without filing suit, even if the Notice Letter were sent for marking purposes, CAS's argument only further cannot succeed.[10]

> c. The Parties' Subsequent Communications Further Confirm There Is an Actual Case or Controversy.

CAS asserts that because "Red Hat plainly omits any exhibits evidencing [Red Hat's pleaded] communications," this Court's analysis should be limited to the Notice Letter. [DE 15, at 11]. However, the parties' communications were pleaded in Red Hat's verified Complaint, and thus are properly considered under the doctrine of incorporation by reference. *See* [DE 1 ¶ 38]; *Dolby Lab'ys, Inc. v. Intertrust Techs. Corp.*, No. 19 Civ. 03371, 2019 WL 5788574, at *4 (N.D. Cal. Nov. 6, 2019) (considering letters referenced, but not attached). Moreover, CAS's attorney declaration acknowledges that CAS "engaged in a handful of emails, phone calls, and one video conference with counsel for Red Hat over a period of about nine months." [DE 16 ¶ 12]. Although Mr. McGurk seeks to downplay the volume of communications, he confirms they occurred, and they should thus be considered. While (as discussed above) the Notice Letter itself establishes a case or controversy, these additional pleaded communications, *e.g.*, CAS unequivocally making "***patent assertions*** against Red Hat," Ex. 1 at 1, and providing charts purporting to show how Red Hat "infringes" elements of the claims of the patents-in-suit, *id.* at 2, confirm Red Hat's declaratory

---

[10] That fact is underscored by Mr. McGurk's statement that he sent the Notice Letter "at litigation counsel's direction." [DE 16 ¶¶ 9–10].

judgment standing. *See, e.g.*, *3M Co.*, 673 F.3d at 1372–75 (similar statements that products "may infringe," "licenses are available," and claim charts would be provided).

CAS's additional demand that Red Hat enter into an asymmetrical NDA and tolling agreement that would have preserved CAS's ability to sue Red Hat for infringement, while limiting Red Hat's ability to challenge CAS's patents, also reflects CAS's clear intention to position the licensing discussions in anticipation of litigation—one whose filing CAS would control. *See* Ex. 4 at 1–2. If Red Hat did not have the right to "file any lawsuit against CAS during the Term," CAS would not have had any reason to ask Red Hat to enter into such an agreement. *Id.* at 1. CAS's demand confirms that it sought to litigate if Red Hat would not pay and thus further evidences an actual case or controversy. *See* [DE 1 ¶ 56]; *Arris Grp., Inc. v. Brit. Telecomms PLC*, 639 F.3d 1368, 1381 (Fed. Cir. 2011) (defendant's "refusal to grant [plaintiff] a covenant not to sue provides a level of additional support for our finding that an actual controversy exists").

### 2. This Court Has Both Supplemental and Diversity Jurisdiction over the NC APAA Claim.

CAS argues that "[s]hould the Court dismiss Red Hat's declaratory judgment claims, it should likewise dismiss the APAA claim under Section 1367(c)(3), as there is no original jurisdiction over that claim." [DE 15, at 14]. Not so—as explained above, this Court has special jurisdiction over Red Hat's NC APAA claim. *See* Section IV.A.3, *supra*.

In the alternative, this Court has diversity jurisdiction. CAS does not dispute that the parties are diverse, but argues Red Hat does not establish that "the amount in controversy exceeds $75,000." [DE 1 ¶ 15]. However, the pleaded amount in controversy must be accepted if the allegation is made in good faith. *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 87; *Glynn*, 2021 WL 647373, at *3 (E.D.N.C. Jan. 28, 2021). CAS has not disputed that Red Hat's allegation that the amount in controversy exceeds $75,000 was made in good faith.

Red Hat has also more than plausibly satisfied the $75,000 amount-in-controversy requirement by pleading the recovery of attorneys' fees and costs as part of its NC APAA claim. *See* [DE 1 ¶ 145]. The NC APAA provides for recovering fees. *See* N.C. Gen. Stat. § 75-141(b); *Rosas v. Hearn*, No. 19 Civ. 00594-RJC-DSC, 2019 WL 6880631, at *2 (W.D.N.C. Dec. 17, 2019) ("[I]f [a] state statute . . . provides for recovery of attorneys' fees, such fees are included in the amount in controversy.") (citation omitted). Red Hat also alleged that it has diverted significant resources to addressing CAS's bad faith patent assertion. [DE 1 ¶ 144]. The $75,000 threshold therefore is satisfied. *See, e.g.*, *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1152 (Fed. Cir. 2023) (affirming $5 million fee award in patent case).

### C.   Red Hat's Complaint Properly States a Claim Under the NC APAA.

CAS further asserts that "Red Hat has failed to adequately plead a viable APAA claim." [DE 15, at 15]. Yet, courts have found allegations that a plaintiff has been "aggrieved" by bad-faith infringement claims sufficient to plead a claim under the NC APAA. *See NAPCO*, 555 F. Supp. 3d at 207. N.C. Gen. Stat. § 75-143(a) sets forth factors that a court may consider when determining whether a bad-faith infringement assertion has been made, and Red Hat pleaded accordingly. *See* [DE 1 ¶¶ 68–94]; *Schaefer Sys.*, 2023 WL 4055712, at *7 (NC APAA claim proper where complaint included "specific contentions directed at several of the Section 75-143(a) factors"). Red Hat also pleaded that CAS's bad-faith assertions "caused a significant burden on and damages to Red Hat" by forcing it to "divert resources to research, review, and investigate CAS's claims, as well as correspond with attorneys and defend against the claims." [DE 1 ¶ 144]; *see also NAPCO*, 555 F. Supp. 3d at 207.

CAS nevertheless argues that the "Complaint fails to evidence any of the [N.C. Gen. Stat. § 75-143(a)] factors," and identifies six factors. [DE 15, at 15–16]. However, CAS's arguments reveal its true position is *not* that Red Hat failed to plead *any* facts that CAS made a bad-faith

assertion of infringement. Rather, CAS disputes the veracity of those facts. *See, e.g.*, [DE 15, at 17] ("Red Hat's **characterizations** are false."). Again, at the motion-to-dismiss stage, the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet*, 591 F.3d at 255. CAS would have this Court "dismiss the case based on Defendants' characterization of their licensing efforts which is disputed by Plaintiff – [which] would turn the standard of review of a 12(b)(6) motion on its head." *Schaefer Sys.*, 2023 WL 4055712, at *7.

Indeed, none of CAS's four specific arguments warrant dismissal. **First,** CAS argues it did not send Red Hat a "demand," "as it neither asserts nor claims that Red Hat either engaged in patent infringement or should obtain a license." [DE 15, at 16]. However, CAS's Notice Letter explicitly stated CAS's "**intention of licensing its patent portfolio to your company**." [DE 1-10]. Moreover, CAS subsequently demanded that Red Hat accept a license, provided claim charts, and refused to withdraw its patent assertions.[11] [DE 1 ¶¶ 38–54]; *see also 3M*, 673 F.3d at 1372–75.

**Second,** CAS argues that because it did not identify any settlement amount, Red Hat cannot show an offer to license was not based on a reasonable estimate of the value of the license or the cost of defending a lawsuit. *See* [DE 15, at 16–17]. Again, however, CAS ignores that Red Hat's allegations must be construed in the light most favorable to Red Hat. Red Hat alleged that "CAS's license demand, coupled with its failure to provide a proper infringement analysis or name any settlement sum, demonstrates that its offer to license the Asserted Patents is not based on a

---

[11] Further, under § 75-143(a)(1), a demand may evidence a bad-faith assertion where it omits: "[f]actual allegations concerning the specific areas in which the target's products, services, and technology infringe the patent or are covered by specific, identified claims in the patent" or "[a]n explanation of why the person making the assertion has standing . . . ." CAS fails to acknowledge Red Hat alleges that CAS's correspondence lacked the information required in § 75-143(a)(1). [DE 1 ¶¶ 68–70].

reasonable estimate of the value of the license." [DE 1 ¶¶ 86–88]. At best, CAS disputes the veracity of that allegation, not whether the allegation exists.

**Third,** CAS argues its demand could not have been "meritless," because it supposedly never accused Red Hat of infringement. [DE 15, at 17]. Not so—as discussed above, CAS expressly alleged infringement and sought to license.

**Fourth,** CAS contends Red Hat "identifies no deception on CAS's part." [DE 15, at 17]. Again, CAS argues it "took no infringement position in its Notice Letter." *Id.* Yet, given the Court must construe all facts in the light most favorable to Red Hat, Red Hat has alleged a plausible claim that CAS acted in bad faith. *See* [DE 1 ¶¶ 98–100]. Indeed, by CAS's own argument, it sent the Notice Letter intending to license the Asserted Patents to Red Hat, ***without any position regarding whether Red Hat infringed***. That kind of bad-faith behavior fits squarely within the NC APAA. N.C. Gen. Stat. § 75-145(e).[12]

### D. Should the Court Find any Deficiency in Red Hat's Pleading, Red Hat Requests Leave to Conduct Jurisdictional Discovery.

CAS asks this Court to rely on new facts introduced in its Motion—including facts contradicted by the pleadings and CAS's own previous communications. If the Court finds that CAS has meaningfully disputed any fact on which Red Hat relies to show jurisdiction or standing, Red Hat is entitled to seek "jurisdictional evidence in the form of depositions, interrogatory answers . . . or other appropriate forms." *Williams,* 2022 WL 10145802, at *2 (internal citations and quotations omitted).

---

[12] Additionally, under Section 75-143(a)(9), bad-faith acts can be found if "[t]he person making the claim or assertion sent the same demand or substantially the same demand to multiple recipients and made assertions against a wide variety of products and systems without reflecting those differences in a reasonable manner in the demands." Here, CAS admits it sent the same demand to 37 companies, further confirming that Red Hat's NC APAA claim is viable. *See* [DE 15, at 2].

As discussed above, Red Hat's Complaint includes numerous allegations showing that CAS purposefully directed activities at Red Hat. *See* Section IV.A.1, *supra*. If the Court does not deny CAS's Motion outright, Red Hat should be permitted to pursue discovery regarding any assertions by CAS that contradict those allegations and that are material to personal jurisdiction or standing—including CAS's contention that its Notice Letter and supposedly "sporadic communications" with Red Hat are its only forum-related activities. *See* [DE 15, at 2, 7].

Jurisdictional discovery will reveal additional facts relevant to personal jurisdiction, such as whether CAS has targeted other North Carolina companies regarding the Asserted Patents. *See* Ex. 2 (Proposed RFP 1); Ex. 3 (Proposed ROG 1). Jurisdictional discovery will also confirm the true nature and scope of the communications between CAS and Red Hat, including additional evidence that CAS did, in fact, allege patent infringement and any non-privileged analysis CAS performed in connection with the communications. *See* Ex. 2 (Proposed RFP 3); Ex. 3 (Proposed ROG 3). Further, a deposition of Mr. McGurk regarding his declaration would allow Red Hat to probe the veracity of his statements, including that "Red Hat initiated all communications . . . ." *See, e.g.*, [DE 16 ¶¶ 12–15].

Jurisdictional discovery will likewise reveal facts relevant to standing, such as whether the 37 letters that CAS sent contained infringement assertions (*see* Ex. 2 (Proposed RFP 2)); the identity of the "litigation counsel" who allegedly directed the Notice Letter; and the veracity of the statement that the Notice Letter was solely for marking compliance. *See* Ex. 3 (Proposed ROG 2).

### E. In the Event any Cause of Action Is Dismissed, the Court Should Grant Red Hat Leave to Amend Its Complaint.

As discussed above, Red Hat's Complaint pleads facts that are more than sufficient to support jurisdiction and standing. Nevertheless, to the extent the Court disagrees, Red Hat respectfully asks the Court to grant Red Hat leave to amend its Complaint. *See Laber v. Harvey*,

438 F.3d 404, 426 (4th Cir. 2006) (leave to amend shall be freely given) (internal quotations and citations omitted).

## V.       CONCLUSION

For the reasons set forth above, Red Hat respectfully asks this Court to deny CAS's Motion. In the alternative, to the extent the Court does not deny CAS's Motion, Red Hat respectfully asks for leave to conduct limited jurisdictional discovery and to deem the discovery requests attached as Exhibits 2–3 hereto as served on the date the Court enters its Order on CAS's Motion. Should the Court grant any portion of CAS's Motion, Red Hat also respectfully asks the Court to grant Red Hat leave to amend its Complaint.

Dated: November 15, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Brandon H. Brown*

Greg Arovas (*pro hac vice* forthcoming)
Todd M. Friedman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
greg.arovas@kirkland.com
todd.friedman@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Brandon H. Brown (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
brandon.brown@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Yimeng Dou (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: +1 213 680 8400
Facsimile: +1 213 680 8500
yimeng.dou@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Richard T. Matthews (N.C. #32817)
Andrew R. Shores (N.C. #46600)
WILLIAMS MULLEN
P.O. Drawer 1000
Raleigh, NC 27602-1000
Telephone: +1 919 981 4000
Facsimile: +1 919 981 4300
rmatthews@williamsmullen.com
ashores@williamsmullen.com
Local Civil Rule 83.1(d) Attorney for Plaintiff

*Attorneys for Plaintiff Red Hat, Inc.*

27

## CERTIFICATE OF WORD COUNT

I hereby certify that **PLAINTIFF RED HAT, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** contains 8316 words as counted by the Microsoft Word word-count function, and thereby complies with the Local Rule 7.2(f)(3).

Dated: November 15, 2024                        KIRKLAND & ELLIS LLP

By: */s/ Brandon H. Brown*
Brandon H. Brown (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
brandon.brown@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF RED HAT, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will give notice of such filing to all attorneys currently on record in the above-captioned case including:

COATS + BENNETT, PLLC
Gavin B. Parsons
NC State Bar No. 28013
1400 Crescent Green, Suite 300
Cary, NC 27518
Tel: (919) 719-4868
Fax: (919) 719-4585
Email: gparsons@coatsandbennett.com

STINSON LLP
B. Scott Edison, #57757MO
Timothy D. Krieger, #57832MO
Julie C. Scheipeter, #65978MO
David S. Kim, #67274MO
Zachary T. Buchheit, #71816MO
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Tel: (314) 863-0800
Fax: (314) 259-3924
Email: scott.eidson@stinson.com
Email: tim.krieger@stinson.com
Email: julie.scheipeter@stinson.com
Email: david.kim@stinson.com
Email: zachary.buchheit@stinson.com

Dated: November 15, 2024

KIRKLAND & ELLIS LLP

By: */s/ Brandon H. Brown*
Brandon H. Brown (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
brandon.brown@kirkland.com
Local Civil Rule 83.1(e) Attorney for
Plaintiff