IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-505-D

| | |
|---|---|
| RED HAT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| COMPETITIVE ACCESS | ) |
| SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

On September 3, 2024, Red Hat, Inc. ("Red Hat" or "plaintiff") filed a complaint against Competitive Access Systems, Inc. ("CAS" or "defendant") [D.E. 1]. Red Hat alleges a violation of the North Carolina Abusive Patent Assertions Act ("APAA"), N.C. Gen. Stat. §§ 75-140, et seq., and seeks a declaratory judgment of noninfringement for each of CAS's seven patents. See id. at 18–27. On October 25, 2024, CAS moved to dismiss the complaint [D.E. 14] and filed a memorandum in support [D.E. 15] and declaration [D.E. 16]. See Fed. R. Civ. P. 12(b)(1), (2), (6). On November 15, 2025, Red Hat responded in opposition [D.E. 22]. On November 27, 2024, CAS replied [D.E. 27]. As explained below, the court denies CAS's motion to dismiss.

I.

This case concerns seven software patents that CAS owns and a series of communications CAS sent to Red Hat about those patents. See Compl. ¶¶ 25–102. Red Hat is a software services corporation headquartered in Raleigh, North Carolina, and incorporated under Delaware law. See id. at ¶ 9. Red Hat produces and maintains widely used enterprise business software. See id. at ¶

28. CAS is a corporation headquartered in Plano, Texas, and incorporated under Texas law. See id. at ¶ 10; [D.E. 16] ¶ 3. CAS monetizes patents through licensing. See Compl. ¶ 11.

On October 2, 2023, CAS, through patent attorney Clay McGurk ("McGurk"), sent a letter to Red Hat's general counsel. See [D.E. 1-10] 2. CAS's letter is addressed to "Red Hat Corporation HQ 100 East Davie Street Raleigh, NC 27601." Id. In this letter, CAS stated that it owns seven patents ("the DeLangis Portfolio") that cover the Multipath Transmission Control Protocol ("MPTCP"). See id. The MPTCP is one of many ways computers may communicate among themselves over the internet. See Compl. ¶ 58. CAS also stated that Red Hat "may already be using the MPTCP protocol," that "[u]sing the CAS routing techniques" likely increases the speed and reliability of Red Hat's products, and that CAS, in its letter, "[was] providing notice about its patents" to Red Hat. [D.E. 1-10] 2. CAS stated its intention to license the DeLangis Portfolio to Red Hat and that "CAS settled with a major U.S. company in case number 2:27-cv-287." Id. CAS finished the letter by asking Red Hat to "[p]lease contact [CAS] right away to discuss licensing opportunities." Id. CAS did not provide claim charts or an analysis of how Red Hat's software specifically infringed the DeLangis Portfolio. See Compl ¶ 72.

From November 27, 2023, to June 18, 2024, McGurk and Red Hat's Director of Litigation exchanged emails, phone calls, and had a video conference. See [D.E. 22-1] 2–5; Compl. ¶ 38. During these conversations, Red Hat requested repeatedly that CAS provide claim charts. See Compl. ¶¶ 42–48. On June 18, 2024, CAS sent claim charts for three of the seven patents in the DeLangis Portfolio. See id. at ¶ 47. In CAS's corresponding email, CAS stated that it "is not withdrawing any paetnt [sic] assertions at this time." [D.E. 22-1] 2. CAS added that it "believe[s] that [CAS's] patent assertions against Red Hat have merit." Id. All three claim charts that CAS sent to Red Hat concern expired patents. See Compl. at ¶ 48.

2

II.

CAS moves to dismiss for lack of specific personal jurisdiction. See [D.E. 15] 5–9; Fed. R. Civ. P. 12(b)(2).[1] The court applies the law of the United States Court of Appeals for the Federal Circuit when considering patent issues. See Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1348 (Fed. Cir. 2002); Murj, Inc. v. Rhythm Mgmt. Grp., LLC, 622 F. Supp. 3d 109, 114 (D. Md. 2022); W.L. Gore & Assocs., Inc. v. Medtronic, Inc., 778 F. Supp. 2d 667, 670 (E.D. Va. 2011); Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., 304 F. Supp. 2d 769, 771 (M.D.N.C. 2004). "While personal jurisdiction might appear to be a nonpatent issue at first glance, the Federal Circuit has held that with respect to personal jurisdiction, it applies Federal Circuit law because the jurisdictional issue is intimately involved with the substance of the patent laws." W.L. Gore, 778 F. Supp. 2d at 670 (cleaned up); see Breckenridge Pharm, 444 F.3d at 1361; Deprenyl Animal, 297 F.3d at 1348; Murj, 622 F. Supp. 3d at 114; Walter Kidde, 304 F. Supp. 2d at 771. "Federal Circuit law regarding due process also applies to the question of personal jurisdiction on non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims." Breckenridge Pharm., 444 F.3d at 1361 (quotation omitted). Personal jurisdiction, however, "cannot rest on special patent policies." Trimble Inc. v. PerDiemCo LLC, 997 F.3d 1147, 1154 (Fed. Cir. 2021).

The court lacks personal jurisdiction over a nonresident defendant unless jurisdiction comports with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process

---

[1] Red Hat does not contend that the court has general personal jurisdiction over CAS. See [D.E. 22] 12–19.

3

Clause. See, e.g., Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc., 909 F.3d 1134, 1141 (Fed. Cir. 2018).[2] North Carolina's long-arm statute extends personal jurisdiction over a nonresident defendant consistent with the Fourteenth Amendment's Due Process Clause. See Walter Kidde, 304 F. Supp. 2d at 771; Celgard, LLC v. SK Innovation Co., No. 3:13-CV-254, 2014 WL 5430993, at *2 (W.D.N.C. Aug. 29, 2014) (unpublished), aff'd, 792 F.3d 1373 (Fed. Cir. 2015); cf. Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See Walter Kidde, 304 F. Supp. 2d at 771; Celgard, 2014 WL 5430993, at *2; cf. Nolan, 259 F.3d at 215; Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021).

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotations omitted). The minimum contacts analysis considers "the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quotation omitted); see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 358–60 (2021); Bristol-Myers Squibb Co. v. Super. Ct., 582 U.S. 255, 264 (2017). This analysis ensures that a defendant is not haled into a court's jurisdiction "solely as a result of random, fortuitous, or attenuated

---

[2] The APAA includes a special jurisdictional provision for recipients of alleged bad faith assertion letters. See N.C. Gen. Stat. § 75-145(e). Red Hat qualifies under this provision. See Schaefer Sys. Int'l, Inc. v. Aloft Media, LLC, No. 322-CV-513, 2023 WL 4055712, at *4–6 (W.D.N.C. June 16, 2023) (unpublished). Section 75-145(e) also states, "[t]his Article shall be construed as a special jurisdiction statute in accordance with [North Carolina's long-arm statute]. Id. (citing N.C. Gen. Stat. § 1-75.4(2)). Thus, the court construes the APAA according to North Carolina's long-arm statute.

contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations omitted); see Ford Motor Co., 592 U.S. at 359.

The minimum contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King, 471 U.S. at 472 (quotation omitted); see Ford Motor Co., 592 U.S. at 359; Bristol-Myers Squibb, 582 U.S. at 262; cf. ALS Scan, Inc. v. Digit. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); Atl. Corp., 565 F. Supp. 3d at 760. In determining specific jurisdiction, the Federal Circuit considers "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." Xilinx, Inc. v. Papst Licensing GmbH & Co. KG, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quotation omitted); see Trimble, 997 F.3d at 1153 (Fed. Cir. 2021); Breckenridge Pharm., 444 F.3d at 1363; Deprenyl Animal, 297 F.3d at 1350–51; Akro Corp. v. Luker, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995). "With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Breckenridge Pharm., 444 F.3d at 1363 (quotation omitted); see Trimble, 997 F.3d at 1153; Xilinx, 848 F.3d at 1356; Akro, 45 F.3d at 1545–46. Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King, 471 U.S. at 474 (quotation omitted); see Bristol-Myers Squibb, 582 U.S. at 264–66; Walden, 571 U.S. at 284–91.

First, in analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a state, the court may consider various contacts with the forum state. See Burger King, 471 U.S. at 474; Bristol-Myers Squibb, 582 U.S. at 264–66;

5

Walden, 571 U.S. at 284–91. Such contacts include "letters and phone calls initiated from out-of-state." Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC, 910 F.3d 1199, 1205 (Fed. Cir. 2018); see Xilinx, 848 F.3d at 1354. "An entity that repeatedly sends communications into a forum state clearly has fair warning that its activity may subject it to the jurisdiction of a foreign sovereign." Trimble, 997 F.3d at 1155 (cleaned up). Indeed, "communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." Id.; see Xilinx, 848 F.3d at 1354. The mere "sending of a letter that forms the basis for the claim may be sufficient to establish minimum contacts." Jack Henry, 910 F.3d at 1204; see New World Int'l, Inc. v. Ford Glob. Techs., LLC, 859 F.3d 1032, 1037–38 (Fed. Cir. 2017).

Second, the claims must have arisen out of or relate to those activities that the defendant directed at the state. See Ford Motor Co., 592 U.S. at 361–71; Xilinx, 848 F.3d at 1353; Breckenridge Pharm., 444 F.3d at, 1363; cf. UMG Recordings, 963 F.3d at 354–55; Atl. Corp., 565 F. Supp. 3d at 760.

Third, the court must analyze whether the exercise of personal jurisdiction is reasonable and fair. See Ford Motor Co., 592 U.S. at 368; Bristol-Myers Squibb, 582 U.S. at 262–65; Burger King, 471 U.S. at 476–78; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Trimble, 997 F.3d at 1153; cf. Consulting Eng'rs, 561 F.3d at 279; Atl. Corp., 565 F. Supp. 3d at 760–61. This analysis permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully directed its activities into the forum states. See Trimble, 997 F.3d at 1153; cf. Consulting Eng'rs, 561 F.3d at 279; Atl. Corp., 565 F. Supp. 3d at 760–61. Such factors include:

> (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

Trimble, 997 F.3d at 1153 (cleaned up).

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without receiving evidence, a plaintiff need only make a prima facie showing of personal jurisdiction. See Xilinx, 848 F.3d at 1352; cf. Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media & Ent., LLC v. Associated Broad. Co., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See Xilinx, 848 F.3d at 1352; cf. Hawkins, 935 F.3d at 226; Mylan Lab'ys, 2 F.3d at 60. A plaintiff need not establish the existence of personal jurisdiction by a preponderance of the evidence. See Xilinx, 848 F.3d at 1352; cf. Sneha Media & Ent., 911 F.3d at 196–97. If the court receives evidence concerning personal jurisdiction, a plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. See Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG, 933 F.3d 1302, 1309 (Fed. Cir. 2019); cf. Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016).

CAS contends that its contacts with North Carolina are insufficient. See [D.E. 15] 7–9. Specifically, CAS argues that under Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998), merely informing a party in the forum state of suspected infringement cannot support personal jurisdiction. See id. at 1360–61; [D.E. 15] 8. In Jack Henry, however, the Federal Circuit explained that Red Wing "did not create such a rule." Jack Henry, 910 F.3d at 1206; see Trimble, 997 F.3d at 1155; New World, 859 F.3d at 1037–38; Xilinx, 848 F.3d at 1354. Moreover, in the light most favorable to Red Hat, CAS's initial correspondence is a demand letter.

7

See [D.E. 1-10] 2. Furthermore, as the Federal Circuit observed in Trimble, Red Wing concerned only three letters sent into the forum state. See Trimble, 997 F.3d at 1153–54. To the extent Red Wing has precedential value, it does not help CAS because CAS communicated with Red Hat employees in North Carolina through several emails, two phone calls, a mailed letter, and a video conference. See Compl. ¶ 38, 40–41; [D.E. 22-1] 2–4.

Numerosity aside, the "nature and scope of [CAS's] communications" also support personal jurisdiction. Trimble, 997 F.3d at 1155. Starting with its initial letter addressed to Red Hat's Raleigh, North Carolina headquarters, CAS purposefully directed its contacts to North Carolina. See Compl. ¶¶ 29, 35–37; 41–42; [D.E. 1-10] 2. More than just a mere technical notice, CAS singled-out Red Hat's General Counsel as the intended recipient. See [D.E. 1-10] 2. Moreover, CAS concluded its letter by stating its "intention of licensing its patent portfolio to [Red Hat]" and noting its recent "settle[ment] with a major U.S. Company." Id. These facts support personal jurisdiction. See Jack Henry, 910 F.3d at 1206; Trimble, 997 F.3d at 1155; New World, 859 F.3d at 1037–38; Xilinx, 848 F.3d at 1354.

CAS also initiated or engaged in telephone conversations, sustained email communication, and a video conference with Red Hat employees in North Carolina. See Compl. ¶ 38, 40–41; [D.E. 22-1] 2–4. Most of these communications were directed at Red Hat's Director of Litigation. See [D.E. 22-1] 2–4. In a June 18, 2024, email to Red Hat's Director of Litigation, CAS stated that it "believes that [its] patent assertions against Red Hat have merit." [D.E. 22-1] 2. In that same email, CAS stated that it refuses to withdraw "any paetnt [sic] assertions at this time." Id. Moreover, CAS attached three claim charts, a proposed nondisclosure agreement, and technical documentation in support of its patent assertions. See [D.E. 22-1] 2, 4–5. Taken together, CAS's communications "threatening suit or proposing settlement or patent licenses" suffice to establish

8

specific personal jurisdiction. Trimble, 997 F.3d at 1155; see Jack Henry, 910 F.3d at 1204–06; New World, 859 F.3d at 1037–38; Xilinx, 848 F.3d at 1354; cf. Schaefer Sys., 2023 WL 4055712, at *4–6.

Red Hat's APAA and declaratory judgment claims arise directly from these communications. See Burger King, 471 U.S. at 472; New World, 859 F.3d at 1037; Xilinx, 848 F.3d at 1354. Furthermore, the exercise of personal jurisdiction here is reasonable considering, inter alia, North Carolina's interest in protecting "North Carolina businesses from abusive and bad-faith assertions of patent infringement." N.C. Gen. Stat. Ann. § 75-141. Thus, the court has specific personal jurisdiction over CAS.

III.

CAS moves to dismiss Red Hat's declaratory judgment claims for lack of standing. See [D.E. 15] 9–15; Fed. R. Civ. P. 12(b)(1). A plaintiff establishes Article III standing by showing: (1) that the plaintiff has "suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (cleaned up); see Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024); Tyler v. Hennepin Cnty., 598 U.S. 631, 636 (2023); TransUnion LLC v. Ramirez, 594 U.S. 413, 423–30 (2021); Frank v. Gaos, 586 U.S. 485, 492 (2019) (per curiam); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Laufer v. Naranda Hotels, LLC, 60 F.4th

9

156, 161 (4th Cir. 2023); Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 450 (4th Cir. 2017). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560; see Spokeo, Inc., 578 U.S. at 338. If a plaintiff lacks standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claim. See, e.g., Lujan, 504 U.S. at 560–61; White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005).

Injury-in-fact requires the plaintiff to demonstrate a "concrete and particularized" harm. Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 653 (4th Cir. 2019); see Spokeo, 578 U.S. at 340. Concreteness requires the injury to be "real, and not abstract," even if the harm is intangible. Spokeo, 578 U.S. at 340 (quotation omitted); see Curtis v. Propel Prop. Tax Funding, L.L.C., 915 F.3d 234, 240–41 (4th Cir. 2019). Furthermore, "in determining whether a given injury meets the constitutional threshold, [courts] look to both historic practice and the judgment of Congress." Krakauer, 925 F.3d at 653; see TransUnion, 594 U.S. at 424–26; Spokeo, 578 U.S. at 340–41; Lujan, 504 U.S. at 560. Tangible or intangible injuries can satisfy the requirement of concreteness. See Spokeo, 578 U.S. at 340–41.

As it relates to standing, the "purpose of the Declaratory Judgment Act in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1285 (Fed. Cir. 2007) (cleaned up). The Declaratory Judgment Act, however, "is not an independent basis for subject matter jurisdiction." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008). A plaintiff must satisfy Article III's standing requirements to seek a declaratory judgment. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 130 (2007); Mitek Sys., Inc. v. United Servs. Auto. Ass'n, 34 F.4th 1334, 1340 (Fed. Cir. 2022); Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 903 (Fed. Cir. 2014); Arris Grp., Inc. v. Brit. Telecomms. PLC, 639 F.3d 1368, 1373 (Fed.

10

Cir. 2011); Prasco, 537 F.3d at 1335–36. A plaintiff must plausibly allege that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 130; Mitek, 34 F.4th at 1340; Microsoft, 755 F.3d at 903; Arris, 639 F.3d at 1373; Prasco, 537 F.3d at 1335–36.

"[C]ontinued willingness to engage in licensing negotiations does not prevent a plaintiff from maintaining a declaratory judgment suit." Sony, 497 F.3d at 1286. When a party "asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy [exists]." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007); Sony, 497 F.3d at 1286. A patent holder cannot defeat a declaratory judgment action with communications that simply avoid "magic words such as 'litigation' or 'infringement.'" Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

CAS argues that "it has never threatened to sue Red Hat for patent infringement or demanded it take a license, and so it cannot establish . . . standing." [D.E. 15] 10 (emphasis in original); see [D.E. 16] ¶ 11. Nonsense. CAS sent Red Hat an unsolicited letter asserting that CAS's DeLangis Portfolio covers the MPTCP and that Red Hat "may already be using the MPTCP protocol." [D.E. 1-10] 2. Moreover, CAS highlighted a recent settlement, provided a case number, and asked Red Hat to contact CAS "right away." Id. By announcing ownership of the DeLangis Portfolio, asserting that Red Hat may be using technology covered by the DeLangis Portfolio, highlighting a recent example of CAS enforcing the DeLangis Portfolio, and requesting an immediate response, CAS's conduct "can be reasonably inferred as demonstrating intent to enforce a patent." Hewlett-Packard, 587 F.3d at 1363.

11

CAS's subsequent communications with Red Hat bolster this conclusion. In its June 18, 2024 email to Red Hat, CAS stated that it "believe[s] that [its] patent assertions against Red Hat have merit" and explicitly declined to withdraw "any paetnt [sic] assertions." [D.E. 22-1] 2. Moreover, CAS attached three claim charts and a proposed nondisclosure agreement that contemplated the possibility of patent infringement litigation. See Compl. ¶¶ 47–48; [D.E. 22-1] 4; [D.E. 22-4] 2.

Red Hat maintains that it need not license the DeLangis Portfolio for its products. See Compl. ¶¶ 103–37. Red Hat plausibly alleges a "substantial controversy . . . of sufficient immediacy and reality" to satisfy Article III. See, e.g., Sony, 497 F.3d at 1286; Hewlett-Packard, 587 F.3d at 1362; SanDisk, 480 F.3d at 1381.

As for Red Hat's APAA claim, it arises from the same "nucleus of operative fact" as Red Hat's declaratory judgment claims. Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 27 (2025); see, e.g., 28 U.S.C. § 1367; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); Karanik v. Cape Fear Acad., Inc., 608 F. Supp. 3d 268, 289 (E.D.N.C. 2022). The court has original jurisdiction over Red Hat's declaratory judgment claims. See, e.g., 28 U.S.C. § 1338(a); Prasco, 537 F.3d at 1335 n.3; D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 775 (D. Md. 2009). And the court has supplemental jurisdiction over Red Hat's APAA claim. Royal Canin, 604 U.S. at 27; Gibbs, 383 U.S. at 725; ESAB, 685 F.3d at 394; Cahill, 58 F.3d at 110; Karanik, 608 F. Supp. 3d at 289. Thus, the court has subject-matter jurisdiction over Red Hat's claims.

IV.

CAS moves to dismiss Red Hat's APAA claim for failure to state a claim. See [D.E. 15]

15–17; Fed. R. Civ. P. 12(b)(6). "While the Federal Circuit has exclusive jurisdiction over appeals involving patent issues, application of Federal Rule of Civil Procedure 12(b)(6) in patent cases is a procedural question governed by the law of the regional circuit." NAPCO, Inc. v. Landmark Tech. A, LLC, 555 F. Supp. 3d 189, 201 (M.D.N.C. 2021); see, e.g., McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 (Fed. Cir. 2007); Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 937 (Fed. Cir. 2003). Thus, the court applies Fourth Circuit procedural law.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense."

13

Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts. Ltd., 551 U.S. 308, 322 (2007); Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

As for Red Hat's APAA claim, the court "must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue." Soto v. Town of Rolesville, 729 F. Supp. 3d 533, 543 (E.D.N.C. 2024); see Twin City Fire Ins. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court first looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is

persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, the court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Until 2021, no court had construed the APAA. See NAPCO, 555 F. Supp. 3d at 199. In the intervening four years, only two courts have addressed the merits of an APAA claim. See Eco Fiber Inc. v. Vance, No. 3:24-CV-465, 2024 WL 3092773, at *2–4 (W.D.N.C. June 21, 2024) (unpublished), appeal dismissed, No. 2024-2180, 2025 WL 1078790 (Fed. Cir. Apr. 10, 2025) (unpublished); Schaefer Sys., 2023 WL 4055712, at *6–7.

The court begins with the APAA's text. Under the APAA, it is "unlawful for a person to make a bad-faith assertion of patent infringement." N.C. Gen. Stat. § 75-143(a). To state a claim under the APAA, a plaintiff must plausibly allege "both objective and subjective bad faith." NAPCO, 555 F. Supp. 3d at 212. Objective bad faith is coextensive with the Federal Circuit's "objectively baseless" standard. See id. at 211–12. Thus, objective bad faith exists when "no reasonable litigant could realistically expect success on the merits." Lite-Netics, LLC v. Nu Tsai Cap. LLC, 60 F.4th 1335, 1343 (Fed. Cir. 2023); see, e.g., Globetrotter Software, Inc. v. Elan Comput. Grp., Inc., 362 F.3d 1367, 1376 (Fed. Cir. 2004); NAPCO, 555 F. Supp. 3d at 212. As for subjective bad faith, "actual knowledge of baselessness is not required." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 551 n.4 (2014) (quotation omitted). The APAA provides several non-exclusive factors the court may consider in determining whether a litigant

15

subjectively acted in bad faith. See N.C. Gen. Stat. §§ 75-143(a), (b); NAPCO, 555 F. Supp. 3d at 211–12. Section (1) lists twelve non-exhaustive factors that a court may consider "as evidence that a person has made a bad-faith assertion of patent infringement." Id. at § 75-143(a). In contrast, section (b) lists seven non-exhaustive factors that a court may consider "as evidence that a person has not made a bad-faith assertion of patent infringement." Id. at § 75-143(b).

Taken together, these factors concern (1) whether a party's demand letter fails to contain certain information and factual allegations, (2) whether a party, if requested, provides that information in a reasonable time, (3) whether a party failed to conduct an analysis comparing the claims in the asserted patent against the target product, (4) whether a party demands a fee or response within an unreasonably short period of time, (5) whether a party has actual or constructive knowledge that their assertion is meritless, (6) whether a party has sent substantially the same demand to multiple targets covering a wide variety of products without reflecting those differences in its demands, (7) whether a party has substantially invested in the use or production of the technology covered by the asserted patent, (8) whether a party is the patent's inventor or a higher-education entity, and (9) whether the party has a history of good-faith or successful patent enforcement. See id. at §§ 75-143(a)–(b); NAPCO, 555 F. Supp. 3d at 210.

Red Hat plausibly alleges objective bad faith. See Compl. ¶¶ 29–56, 67–101; [D.E. 1-10] 2; [D.E. 22-1] 2–4; Lite-Netics, 60 F.4th at 1343; Globetrotter, 362 F.3d at 1376; NAPCO, 555 F. Supp. 3d at 212–14. As for subjective bad faith, the court has considered the APAA factors. See id. at §§ 75-143(a)–(b). Red Hat plausibly alleges subjective bad faith. See Compl. ¶¶ 29–56, 67–101; [D.E. 1-10] 2; [D.E. 22-1] 2–4. Thus, Red Hat plausibly alleges its APAA claim. See NAPCO, 555 F. Supp. 3d 189, 212–14; Schaefer Sys, 2023 WL 4055712, at *6–7; cf. Eco Fiber, 2024 WL 3092773, at *2–4. Whether Red Hat's APAA claim will survive summary judgment is a

16

question for another day. Cf. Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371–73 (Fed. Cir. 2002) (affirming summary judgment against a party bringing a bad faith patent assertion claim). Thus, the court declines to dismiss Red Hat's APAA claim.

V.

In sum, the court DENIES defendant's motion to dismiss plaintiff's complaint [D.E. 14].

SO ORDERED. This 12 day of June, 2025.

                                                        JAMES C. DEVER III
                                                        United States District Judge