# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| RED HAT, LLC, | |
| Plaintiff and Counterclaim-Defendant, | Case No. 5:24-CV-00505-D-BM |
| v. | |
| COMPETITIVE ACCESS SYSTEMS, INC., | |
| Defendant and Counterclaim-Plaintiff. | |

## PLAINTIFF AND COUNTERCLAIM-DEFENDANT RED HAT, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY CASE PENDING EX PARTE REEXAMINATION OF ALL ASSERTED PATENTS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 3

      A.      Red Hat Files Suit Under the APAA. .................................................. 3

      B.      The USPTO Institutes Reexaminations of All Seven Asserted Patents. ................ 4

      C.      This Case Remains in an Early Stage. .................................................. 4

III.   LEGAL STANDARD ........................................................................................... 5

IV.    ARGUMENT....................................................................................................... 6

      A.      This Case Is in the Early Stages of Fact Discovery, and Claim Construction Has Not Commenced. ..................................................... 7

      B.      The USPTO's EPR Determinations Could Substantially Simplify the Issues in This Case........................................................................ 8

      C.      A Stay Will Not Unduly Prejudice CAS.............................................. 13

V.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bear Creek Techs. Inc.*,
No. 12 Md. 02344, 2013 WL 3789471 (D. Del. July 17, 2013)................................................14

*Biogaia AB v. Nature's Way Prods., Inc.*,
No. 10 Civ. 00449-FL, 2011 WL 3664350 (E.D.N.C. Aug. 18, 2011) ........................... *passim*

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
129 F.3d 1247 (Fed. Cir. 1997).........................................................................................10

*Broadcast Innovation, LLC v. Charter Comm'n, Inc.*,
No. 03 Civ. 02223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006)........................12

*Cellectis S.A. v. Precision Biosciences, Inc.*,
No. 08 Civ. 00119-H, 2010 WL 3430854 (E.D.N.C. Aug. 31, 2010) ............................. *passim*

*Chendushiyishengtaiyushang Maoyouxiangongsi v. Wu*,
No. 25 Civ. 00337, 2025 WL 2988452, at *3 (E.D. Va. Oct. 23, 2025) ..........................11, 12

*Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.*,
203 F. Supp. 794 (W.D. Va. 1962) ....................................................................................11

*Competitive Access Systems, Inc. v. Apple. Inc*,
No. 25 Civ. 04595 (N.D. Cal.)........................................................................................1, 4

*Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*,
No. 07 Civ. 00389-F, 2008 U.S. Dist. LEXIS 76374 (E.D.N.C. Feb. 15, 2008)...............12, 14

*In re Cygnus Telecomms. Tech., LLC*,
385 F. Supp. 2d 1022 (N.D. Cal. 2005) .............................................................................11

*Cywee Grp. Ltd. v. Samsung Elecs. Co.*,
No. 17 Civ. 00140-WCB-RSP, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019)......................9

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)..........................................................................................5

*Gioello Enters. Ltd. v. Mattel, Inc.*,
No. 99 Civ. 00375, 2001 WL 125340 (D. Del. Jan. 29, 2001) ...............................................12

*Grayling Indus., Inc. v. GPAC, Inc.*,
No. 89 Civ. 00451-ODE, 1991 WL 236196, at *1 (N.D. Ga. Mar. 25, 1991) ..........................6

*Hewlett-Packard Co. v. Acuson Corp.*,
No. 93 Civ. 00808, 1993 WL 149994 (N.D. Cal. May 5, 1993) ..............................................11

*Ingro v. Tyco Indus., Inc.*,
No. 84 Civ. 10844, 1985 WL 1649 (N.D. Ill. May 31, 1985) ...................................................6

*Internet Patents Corp. v. eBags, Inc.*,
No. 12 Civ. 03385, 2013 WL 4609533 (N.D. Cal. Aug. 28, 2013)........................................13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)................................................................................................................5

*Larada Scis., Inc. v. Flosonix Ventures, LLC*,
No. 18 Civ. 00320-KDB-DSC, 2020 WL 1481571 (W.D.N.C. Mar. 23, 2020) .............8, 9, 14

*Mobile Tech., Inc. v. InVue Sec. Prods. Inc.*,
No. 18 Civ. 00052-KDB-DSC, 2020 WL 9173107 (W.D.N.C. Mar. 5, 2020) ............... *passim*

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
No. 15 Civ. 04431, 2015 WL 7012747 (D.N.J. Nov. 12, 2015)..............................................13

*NFC Tech. LLC v. HTC Am., Inc.*,
No. 13 Civ. 01058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) .........................8, 14

*NSixty, LLC v. A2Z, Inc.*,
No. 17 Civ. 01987, 2018 WL 9944991 (D. Md. Jan. 4, 2018) ........................................11, 12

*Shurtape Techs., LLC v. 3M Co.*,
No. 11 Civ. 00017-RLV, 2013 WL 789984 (W.D.N.C. Mar. 1, 2013).....................................5

*StemCells Inc. v. Neuralstem Inc.*,
No. 06 Civ. 01877, 2009 WL 3681653 (D. Md. Oct. 30, 2009)..............................................10

*Tap Pharm. Prods, Inc. v. Atrix Labs., Inc.*,
2004 WL 422697 (N.D. Ill. Mar. 3, 2004)............................................................................11

**Statutes**

35 U.S.C. § 303(a) ...................................................................................................................8

N.C. Gen. Stat. § 75-141(6) ...................................................................................................15

N.C. Gen. Stat. § 75-141(a)(1).................................................................................................15

N.C. Gen. Stat. § 75-144(b) ...................................................................................................15

**Rules**

37 C.F.R. § 42.104 ...................................................................................................................4

Plaintiff and Counterclaim-Defendant Red Hat, LLC ("Red Hat") respectfully asks the Court to stay this case pending the United States Patent and Trademark Office's ("USPTO") ex parte reexamination ("EPR") of all seven patents asserted by Defendant and Counterclaim-Plaintiff Competitive Access Systems, Inc. ("CAS") in this case.

## I.  INTRODUCTION

In addition to its present patent assertion against Red Hat, CAS is simultaneously asserting the same seven patents-in-suit in a case against Apple Inc. ("Apple").[1]  As of February 4, 2026—well after Red Hat filed its September 2024 Complaint in this case—the USPTO has granted Apple's requests to institute EPR proceedings with respect to all seven patents-in-suit.  *See* Exs. 1–7 (orders granting reexamination).  As such, the USPTO will now examine the validity of ***every*** patent (and every patent claim) asserted in this case and will make determinations for each patent. District courts routinely stay litigations while the USPTO conducts EPR proceedings, because stays pending EPRs promote efficiency and minimize the risk of inconsistent outcomes in the related proceedings.  Based on publicly available data from the USPTO, the EPRs here are likely to invalidate (or result in the amendment of) some or all of the asserted claims.  That outcome would significantly narrow the issues in this case, because: (1) CAS's infringement counterclaims, Red Hat's pending motion to dismiss those counterclaims under 35 U.S.C. § 101 (Dkt. 60), and Red Hat's motion to narrow the number of patent claims from the currently asserted 95 (Dkt. 70) could all be rendered moot; (2) the Court would not have to decide *Markman* issues with respect to claims that are ruled invalid; and (3) the scope of any discovery disputes could be significantly narrowed.

---

[1]  *Competitive Access Systems, Inc. v. Apple. Inc*, No. 25 Civ. 04595 (N.D. Cal.).

1

In view of those likely benefits, Red Hat respectfully asks the Court to stay the present litigation pending the outcome of the EPRs. All three factors that courts consider when evaluating whether to grant stays pending EPRs clearly favor Red Hat's request.

**First,** regarding the stage of the litigation, this case is still in an early phase of discovery. No fact discovery cutoff has been set, Red Hat has yet to answer CAS's Second Amended Counterclaim, and the ESI order was only recently entered, on February 7, 2026. *See* Dkt. 74. To date, CAS has produced a grand total of 16 documents. *See* Declaration of Yungmoon Chang ("Chang Decl.") ¶ 6. Claim construction has only just commenced, and the parties' briefs are not due until May and June 2026.[2] Dkt. 49 at 1–2; Dkt. 52. No depositions have taken place. Chang Decl. ¶ 7. Courts frequently grant stays pending EPRs in cases that are much further along in discovery than the present one. *See, e.g.*, *Cellectis S.A. v. Precision Biosciences, Inc.*, No. 08 Civ. 00119-H, 2010 WL 3430854, at *3 (E.D.N.C. Aug. 31, 2010) (granting motion to stay pending EPR proceedings when fact discovery was almost complete).

**Second,** regarding simplification of the case, a stay pending the outcome of the EPRs is highly likely to make the remaining litigation both simpler and more efficient. *See, e.g.*, *Biogaia AB v. Nature's Way Prods., Inc.*, No. 10 Civ. 00449-FL, 2011 WL 3664350, at *4 (E.D.N.C. Aug. 18, 2011) (granting motion to stay pending EPR proceedings because "the decision of the PTO will clarify issues common to all claims, most likely simplifying resolution of them"). Because EPRs have been instituted for all seven asserted patents, a ruling that all patents under reexamination are invalid would moot CAS's infringement counterclaims and all related invalidity issues. Short of that, even if only a subset of the asserted patent claims is ruled invalid, the scope

---

[2] The parties' deadline to file a Joint Claim Construction Statement is March 27, 2026. The parties' opening and responsive claim construction briefs will be submitted in May and June 2026, respectively. Dkts. 49, 52. No claim construction hearing date has been set.

of the case will still be meaningfully narrowed.  As explained in Red Hat's co-pending motion to narrow the asserted patent claims, CAS currently is asserting **95** separate patent claims, including every claim in six of the seven asserted patents.  *See* Dkts. 60, 61.  Hence, a ruling that any of the seven patents is invalid will significantly reduce the number of claims at issue in this case.

***Third,*** regarding the potential for undue prejudice or tactical advantage, a stay will not unduly prejudice CAS.  Unlike in cases where courts find prejudice, CAS does not make any products and is not a competitor of Red Hat's.  Accordingly, in the unlikely event that CAS prevails on its infringement claims, money damages can sufficiently compensate it for any alleged harm.  Meanwhile, far from prejudicing CAS, granting the requested stay would mitigate a potential source of prejudice to Red Hat.  As explained in Red Hat's co-pending motion for bond, Red Hat has reason to be concerned that CAS lacks the resources to cover any award of Red Hat's fees and costs to which it will be entitled under the North Carolina Abusive Patent Assertions Act ("APAA").  *See* Dkt. 54.  In its opposition to Red Hat's motion, CAS did not even attempt to show that it has the resources necessary to fund that recovery.  *See* Dkt. 63.  Absent a stay, Red Hat will be forced to devote substantial additional resources to litigating 95 patent claims that could very well be ruled invalid by the USPTO—with a substantial risk that CAS will not be able to make Red Hat whole for its fees and costs.

Because all three factors indicate a stay is warranted, Red Hat respectfully asks the Court to grant the requested stay.

## II.    FACTUAL BACKGROUND

### A.    Red Hat Files Suit Under the APAA.

On October 2, 2023, CAS accused Red Hat of infringing the "DeLangis Patent Portfolio" and identified the seven asserted patents by number.  Dkt. 1-10 at 2.  For almost a year afterward, Red Hat repeatedly asked CAS to explain the basis for its accusations, yet CAS failed to provide

3

any meaningful explanation. Dkt. 1 ¶¶ 38–56. In September 2024, Red Hat filed suit seeking relief under the APAA based on CAS's lack of investigation before it accused Red Hat of infringement. *Id.* ¶¶ 138–146. In July 2025, CAS filed a Counterclaim accusing Red Hat of infringing the seven asserted patents. Dkt. 30. Between August 1 and 7, 2025, Red Hat filed petitions for inter partes review ("IPR") of the asserted patents under 35 U.S.C. § 312 and 37 C.F.R. § 42.104. Chang Decl. ¶ 10. On November 20, 2025, the USPTO exercised discretionary denials of Red Hat's IPR petitions. *See* Ex. 15. The USPTO did not make any substantive determinations regarding the merits of Red Hat's invalidity arguments.

**B. The USPTO Institutes Reexaminations of All Seven Asserted Patents.**

In addition to accusing Red Hat of infringing the seven asserted patents, CAS has accused Apple of infringing the same seven patents. *See Competitive Access Systems, Inc. v. Apple. Inc*, No. 25 Civ. 04595 (N.D. Cal.). On December 19, 2025, Apple filed EPR requests under 35 U.S.C. §§ 302–06 on all seven of the patents (and all the patent claims) asserted in this case. *See* Exs. 8–14 (requests for EPR). Between January 13 and February 4, 2026, the USPTO granted all seven of Apple's EPR requests and initiated reexamination proceedings for seven patents-in-suit. *See* Exs. 1–7. On February 18, 2026, Apple moved to stay pending EPRs. *Competitive Access Systems, Inc. v. Apple. Inc*, No. 25 Civ. 04595, at Dkt. 97.

**C. This Case Remains in an Early Stage.**

This litigation is still in its initial stages, with no cutoff set for fact discovery. Dkt. 44. While the parties have exchanged some written discovery, CAS has produced only 16 documents. Chang Decl. ¶ 6. The ESI Order was entered recently, on February 9, 2026. Dkt. 74. No depositions have taken place. Chang Decl. ¶ 7. CAS has served subpoenas seeking document production and deposition testimony from third parties Amazon Web Services, Inc. ("Amazon") and International Business Machines Corporation ("IBM"). *Id.* ¶¶ 8, 9. On February 18, 2026,

4

Amazon served objections to the subpoena. *Id.* ¶ 9. IBM has not yet responded to the subpoena. *Id.* ¶ 8.

Claim construction briefing has yet to take place. The parties exchanged proposed claim construction terms on February 20, 2026 and will file a joint claim construction statement on March 27, 2026. Dkts. 49, 52. The deadlines to file opening and responsive claim construction briefs are May 18, 2026 and June 8, 2026, respectively. Dkt. 49 at 1–2; Dkt. 52. No claim construction hearing has been scheduled. Dkts. 49, 52.

Expert discovery also has yet to begin, and no deadline for expert discovery has been set. *Id.* Likewise, no dates have been set for dispositive motions or trial. *Id.*

## III.    LEGAL STANDARD

Courts have discretion to stay proceedings "pending the outcome of the PTO's reexamination" of a patent. *Biogaia*, 2011 WL 3664350, at *1 (citing *Cellectis*, 2010 WL 3430854, at *2); *see also Mobile Tech., Inc. v. InVue Sec. Prods. Inc.*, No. 18 Civ. 00052-KDB-DSC, 2020 WL 9173107, at *2 (W.D.N.C. Mar. 5, 2020); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). This Court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and with litigants." *Mobile Tech.*, 2020 WL 9173107, at *2 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Courts in this and other districts in North Carolina apply "a liberal policy in favor of granting motions to stay proceedings pending the outcome of PTO reexamination or reissuance proceedings." *Biogaia*, 2011 WL 3664350, at *1 (citing *Cellectis*, 2010 WL 3430854, at *2); *see also Mobile Tech.*, 2020 WL 9173107, at *2; *Shurtape Techs., LLC v. 3M Co.*, No. 11 Civ. 00017-RLV, 2013 WL 789984, at *2 (W.D.N.C. Mar. 1, 2013). This policy is consistent with the reexamination statute's legislative history, which indicates that Congress intended for courts to

5

take a liberal approach to granting stays pending reexamination, "to prevent costly pre-trial maneuvering":

> The bill [establishing the reexamination procedure] does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that **such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure**. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

Ex. 16 (H.R. REP. NO. 96-1307, pt. 1, at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463) (emphasis added); *see also Ingro v. Tyco Indus., Inc.*, No. 84 Civ. 10844, 1985 WL 1649, at *1 (N.D. Ill. May 31, 1985) ("[R]ather than a stay pending reexamination running counter to the reexamination statutes' legislative history, such legislative history indicates **Congress and the testifying witnesses approved of courts liberally granting stays within their discretion**.") (emphasis added); *Grayling Indus., Inc. v. GPAC, Inc.*, No. 89 Civ. 00451-ODE, 1991 WL 236196, at *1 (N.D. Ga. Mar. 25, 1991) ("The intent behind the patent reexamination procedure, passed in 1981, clearly was to provide the federal courts with the expertise of the PTO.").

In determining whether to stay a case pending EPR proceedings, courts consider the following factors: "(1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been scheduled for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and, (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court." *Biogaia*, 2011 WL 3664350, at *1 (citing *Cellectis*, 2010 WL 3430854, at *2).

## IV.     ARGUMENT

All three factors that courts consider when determining whether to grant a stay pending reexamination strongly favor Red Hat's request. Accordingly, Red Hat's motion should be granted.

**A.** **This Case Is in the Early Stages of Fact Discovery, and Claim Construction Has Not Commenced.**

The first factor—the stage of the litigation—plainly favors a stay. This case is in the early stages of discovery, no *Markman* proceedings have taken place, and the Court has not set any cutoff for fact discovery. Courts routinely stay cases pending EPRs at similar or even more advanced stages of the litigation.

For example, the court in *Mobile Tech.* granted a motion to stay pending EPR proceedings where the parties had already exchanged "some written discovery" but "the parties and the Court have not yet engaged in the claim construction process, no depositions have been taken and no trial date has been scheduled." *Mobile Tech.*, 2020 WL 9173107, at *2. The court in *Biogaia* similarly granted a stay pending EPR proceedings after the parties had already exchanged disclosures and served discovery requests. *See Biogaia*, 2011 WL 3664350, at *2; Ex. 17 (*Biogaia*, Dkt. 21) (stating initial disclosures and discovery had been served). The court noted that "[t]he fact that discovery has just begun makes a stay particularly attractive, as the parties can conserve resources while awaiting the determination of the PTO," rather than expending resources "on what is likely to be a lengthy and costly discovery." *Biogaia*, 2011 WL 3664350, at *2.

Here, as in *Mobile Tech.*, while the parties have exchanged some written discovery, claim construction has not begun, no depositions have taken place, and no fact discovery cutoff—let alone a trial date—has been set. Moreover, as in *Biogaia*, although some discovery is underway, a stay will prevent the parties from having to continue spending resources "on what is likely to be a lengthy and costly discovery" process while the USPTO makes its determinations.

Notably, courts have granted stays pending USPTO proceedings even at much later stages of a case. For example, the court in *Cellectis* granted a motion to stay pending IPR proceedings when the litigation had already proceeded for more than two years and fact discovery was almost

complete. *See Cellectis*, 2010 WL 3430854, at *3. The court noted that "[t]he fact that significant resources have been expended to date does not in and of itself justify continued expenditure of significant additional resources, and the preparation for and conducting of a claim construction hearing and trial will no doubt be costly endeavors for both sides." *Id.*; *see also Larada Scis., Inc. v. Flosonix Ventures, LLC*, No. 18 Civ. 00320-KDB-DSC, 2020 WL 1481571, at *2 (W.D.N.C. Mar. 23, 2020) (granting stay where "the case [was] not in its earliest stages and the Court has issued a claim construction order"). The court in *NFC Tech. LLC v. HTC Am., Inc.* similarly granted a stay pending IPR proceedings even though "the parties had engaged in significant discovery, and claim construction briefing was complete," because "the bulk of the expenses that the parties would incur in pretrial work and trial preparation [was] still in the future." No. 13 Civ. 01058-WCB, 2015 WL 1069111, at *3 (E.D. Tex. Mar. 11, 2015).

Here, where the case is still in an early stage and little discovery has taken place, the goal of promoting efficiency and avoiding the unnecessary expenditure of resources weighs strongly in favor of a stay.

**B.      The USPTO's EPR Determinations Could Substantially Simplify the Issues in This Case.**

The second factor—whether a stay will simplify the issues in question and streamline the case for trial—also strongly favors a stay. The pending EPR proceedings are likely to eliminate or significantly narrow the infringement and invalidity issues in this case, including by invalidating all or a substantial portion of the 95 patent claims CAS is currently asserting. Indeed, in instituting the EPRs, the USPTO has already determined that a substantial new question of patentability exists for ***all seven*** asserted patents. *See* 35 U.S.C. § 303(a) ("[T]he Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request . . . ."). Staying this case pending the EPRs will avoid wasting the Court's and the

parties' resources litigating all 95 currently asserted claims, when it is likely that a significant portion of them will be disposed of through the EPRs.

Notably, courts have consistently stayed cases in similar circumstances. For example, the court in *Larada* found that the simplification factor favored a stay where the pending IPR proceedings covered "sixty-four (64) of the sixty-five (65) patent claims at-issue, and the PTAB has already determined there is a reasonable likelihood [that] IPR petitions will invalidate them all." *Larada*, 2020 WL 1481571, at *3. The court found that it would be efficient to wait for the USPTO to resolve the invalidity questions raised in the IPR proceedings because "[f]or each claim invalidated in the IPR, this Court, and the parties, need not consider any issue related to that claim. If 'the PTAB invalidates all of the claims before it, the case will unquestionably become simpler.'" *Id.* (citing *Cywee Grp. Ltd. v. Samsung Elecs. Co.*, No. 17 Civ. 00140-WCB-RSP, 2019 WL 11023976, at *9 (E.D. Tex. Feb. 14, 2019)).

The court in *Mobile Tech.* similarly granted a stay pending EPR proceedings where "issues currently disputed may be avoided (if claims are eliminated [by the USPTO's ruling]) or perhaps significantly altered if the patent claims are amended, thereby simplifying this action." *Mobile Tech.*, 2020 WL 9173107, at *3. The court recognized that "it would be a substantial waste of the parties' and the Court's time to engage in a lengthy claim construction process (involving more than 100 claims) until the final scope of the claims truly at issue is determined." *Id.*

The goal of minimizing the number of issues that the Court and the parties must address in this case supports taking the same approach here. The pending USPTO proceedings have the potential to either dispose of or substantially narrow the scope of CAS's infringement counterclaim and the related issues of invalidity for all asserted claims. If the USPTO invalidates the asserted

claims, CAS's counterclaim will be rendered moot, and there will be nothing left for this Court to decide related to the infringement counterclaims and Red Hat's defenses.

Moreover, even if the claims are not invalidated via the EPRs, CAS may seek to amend the claims of the single unexpired patent (U.S. Pat. No. 7,606,156) during the reexamination process to preserve validity, which could render moot any efforts that this Court and the parties undertake in the meantime related to discovery and claim construction for that patent. If CAS chooses to amend the claims, damages theories in this case would also be changed or eliminated. Indeed, under the doctrine of intervening rights, if CAS substantively amends any patent claim, damages will begin to accrue only after the USPTO proceedings' conclusion—after the '156 Patent expires in October 2026—and CAS will not be able to recover for any infringement that occurred before the amendment. *See StemCells Inc. v. Neuralstem Inc.*, No. 06 Civ. 01877, 2009 WL 3681653, at *2 (D. Md. Oct. 30, 2009) (citing *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997)); *Mobile Tech.*, 2020 WL 9173107, at *3 (staying action, including because "Defendant argues that if the reexamination process leads to the reissuance of amended claims that may change the scope of permitted damages under 35 U.S.C. § 252 and 307(b) so the discovery and trial of damages may similarly be reduced"). Because all but one of the seven asserted patents has already expired, CAS would only be able to seek damages for the '156 Patent through its expiration in October 2026.

There is a strong likelihood in this case that the EPR proceedings will result in the vast majority of the asserted claims being cancelled or amended. As noted above, the USPTO has already determined that substantial new questions of patentability exist as to all of the asserted claims. *See* Exs. 1–7 (Orders granting reexamination). Moreover, USPTO data for 2025 shows that 77.8% of claims subject to EPR are either canceled or amended, and only 22.2% are

confirmed.  *See* Ex. 18 at 2 (USPTO statistics); *Chendushiyishengtaiyushang Maoyouxiangongsi v. Wu*, No. 25 Civ. 00337, 2025 WL 2988452, at *3 (E.D. Va. Oct. 23, 2025) (noting, based on data from 2024, that "of the 12,821 EPRs that have reached a final certificate, 64% included changes to a patent's claims and 14.1% resulted in all claims cancelled").

Accordingly, proceeding with this case while the seven EPRs are pending risks having the Court and the parties spend "'significant time and resources' on issues they ultimately [will] not need to address."  *Wu*, 2025 WL 2988452, at *3 (quoting *NSixty, LLC v. A2Z, Inc.*, No. 17 Civ. 01987, 2018 WL 9944991, at *2 (D. Md. Jan. 4, 2018)); *see also Hewlett-Packard Co. v. Acuson Corp.*, No. 93 Civ. 00808, 1993 WL 149994, at *2 (N.D. Cal. May 5, 1993) ("Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of [the USPTO's] officers."); *Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.*, 203 F. Supp. 794, 796 (W.D. Va. 1962) ("[I]t seems wasteful and extravagant for litigants to be required to proceed simultaneously [in district court and at the USPTO], where the issues, while not identical, are so similar."); *Tap Pharm. Prods, Inc. v. Atrix Labs., Inc.*, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004) (granting stay due to "very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings").

Further, even if the claims remain unchanged following the EPRs—which is unlikely—the USPTO proceedings will be part of the patents' file histories, which the Court and the parties are entitled to consider during claim construction.  *See In re Cygnus Telecomms. Tech., LLC*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (noting that for claims interpreted during reexamination, "[a] court may have a richer prosecution history upon which to base necessary claim construction determinations"); *Mobile Tech.*, 2020 WL 9173107, at *3 (finding simplification factor favored

11

stay, including because "in the reexamination process, Plaintiff may make arguments delimiting the scope of claim terms that will affect these proceedings").

Staying this case pending the EPRs also offers the benefit of avoiding conflicting decisions. *See Wu*, 2025 WL 2988452, at *2 n.3 (quoting *NSixty*, 2018 WL 9944991, at *3) ("[A] stay in proceedings 'until the conclusion of the ongoing USPTO proceeding reduces the risk of contradictory or duplicative rulings in [this] case.'"); *Broadcast Innovation, LLC v. Charter Comm'n, Inc.*, No. 03 Civ. 02223-ABJ-BNB, 2006 WL 1897165, at *8 (D. Colo. July 11, 2006) (citing *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99 Civ. 00375, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001)) ("Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict.").

The fact that Red Hat is asserting an APAA claim does not affect this simplification analysis.[3] Courts routinely grant stays of entire proceedings even when non-patent claims are also at issue. *See Cellectis*, 2010 WL 3430854, at *5–6 (granting stay pending reexamination where case also included non-patent claims); *Cornerstone BioPharma, Inc. v. Vision Pharma*, *LLC*, No. 07 Civ. 00389-F, 2008 U.S. Dist. LEXIS 76374, at *6–7 (E.D.N.C. Feb. 15, 2008) (granting stay pending reexamination to simplify issues and streamline trial where additional claims, including unfair competition, were also at issue, because "each of the Plaintiffs' claims arises out of the initial question of validity of the disputed '796 patent"). Notably, in *Biogaia*, the court granted a stay pending EPR of ***all*** causes of action asserted in the case, including claims for unfair competition and deceptive trade practices, because the "nonpatent claims will be affected by the

---

[3]  Nor does the fact that Red Hat initiated this lawsuit. Apple's EPRs were instituted approximately 18 months after Red Hat filed suit. Red Hat was entitled to bring suit to defend itself against CAS's (unexplained) infringement accusations, and could not have known at that time that the USPTO would eventually reexamine the patents' validity.

reexamination and thus going forward on those claims is impractical." *Biogaia*, 2011 WL 3664350, at *3. Similarly, it would be impractical to bifurcate the present case and proceed solely on Red Hat's APAA claim, where Red Hat has alleged that "[a]ny reasonable investigation [by CAS] would have revealed that Red Hat's products do not infringe any valid and enforceable claim of the Asserted Patents." Dkt. 1 ¶ 140. The USPTO's decisions regarding the validity of the asserted patents "undoubtedly [are] relevant for the court to consider when deciding the [APAA] claim[]" and whether CAS made a bad-faith patent assertions. *Biogaia*, 2011 WL 3664350, at *3.

Ultimately, because the EPR proceedings are highly likely to simplify the issues and reduce the burden of litigation on the Court and the parties, this factor supports Red Hat's request for a stay. *Cellectis*, 2010 WL 3430854, at *5.

### C. A Stay Will Not Unduly Prejudice CAS.

The third factor—whether a stay will unduly prejudice or tactically disadvantage the non-moving party—likewise favors a stay. In evaluating this factor, courts focus on whether the parties are competitors and whether the non-moving party would be deprived of its right to injunctive relief. *See Cellectis*, 2010 WL 3430854, at *4. As noted above, CAS and Red Hat are not competitors. Indeed, CAS does not make any products, much less any that practice the asserted patents. *See* Dkt. 79 (CAS's Suppl. ROG Resp.) at 22 ("CAS does not contend that it has made any products or services intended for sale or offered for sale or sold any products or services that practice the patents-in-suit."). CAS also has not requested an injunction. *See* Dkt. 50 at 145. Accordingly, there is no risk that CAS will face undue prejudice. *See Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15 Civ. 04431, 2015 WL 7012747, at *6 (D.N.J. Nov. 12, 2015) ("The Court finds that Mondis will not suffer undue prejudice from a stay, given that it is not practicing the patents and the patents are expired."); *Internet Patents Corp. v. eBags, Inc.*, No. 12 Civ. 03385, 2013 WL 4609533, at *6 (N.D. Cal. Aug. 28, 2013) ("Plaintiff does not dispute Defendants' contention that

13

it is a non-practicing entity whose business consists 'solely of licensing and otherwise enforcing its patent portfolio.' Courts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement.") (internal citations omitted); *In re Bear Creek Techs. Inc.*, No. 12 Md. 02344, 2013 WL 3789471, at *3 n.8 (D. Del. July 17, 2013) ("Bear Creek . . . does not make, sell, or produce any products that compete with the defendants . . . . Bear Creek will not be prejudiced because it can be compensated by money damages . . . . [E]ven if the claims are ultimately rejected by the PTO, Bear Creek will benefit from the stay because it will not have to expend resources in two fora.").

Moreover, while the requested stay may result in delay, "delay is inherent in the reexamination process and 'does not constitute, by itself, undue prejudice.'" *Cellectis*, 2010 WL 3430854, at *4 (quoting *Cornerstone*, 2008 U.S. Dist. LEXIS 76374, at *5); *see also NFC Tech.*, 2015 WL 1069111, at *2 ("[D]elay in the vindication of patent rights . . . is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion."). Indeed, the court in *Larada* found that this factor favored a stay even where the parties were competitors, in part because the patent owner "has not proceeded with any particular urgency in filing or prosecuting this action." *Larada*, 2020 WL 1481571, at *2.[4] In this case, not only are CAS and Red Hat not competitors, but CAS did not proceed with urgency in filing or prosecuting this action. On the contrary, it was Red Hat, not CAS, that filed this action—after CAS spent almost a year ignoring Red Hat's requests for an explanation of the infringement accusations made in CAS's demand letter and then provided only three claim charts, for patents that were already

---

[4] Similarly, the court in *Biogaia* found that even where the delay could cause harm to the non-moving party—which is not the case here—a stay was still warranted because "[w]hat the court must consider are the potential efficiencies that could accrue from a stay of the litigation . . . . [A] stay offers the potential of simplifying the issues and giving both parties a more accurate idea of how to best direct their energies." *Biogaia*, 2011 WL 3664350, at *3.

14

expired. *See* Dkt. 1 ¶¶ 42–52. In addition, Red Hat promptly filed the present motion 16 days after Apple's final EPR was instituted. Thus, although a stay pending reexamination necessarily entails some delay—which will not unduly prejudice CAS—the timing of Red Hat's request has not added to the delay.

Further, far from causing any prejudice to CAS, the requested stay will mitigate a potential source of prejudice to Red Hat. In its opposition to Red Hat's motion for bond, CAS all but admitted that it does not have the resources to compensate Red Hat for the fees and costs to which Red Hat will be entitled at the end of this litigation. As Red Hat explained in the motion for bond, the APAA provides for the imposition of a bond of up to $500,000 to ensure that the APAA plaintiff may recover at least a portion of its attorneys' fees. *See* Dkt. 63 at 13 (citing N.C. Gen. Stat. §§ 75-141(a)(1), (6)). While CAS could have argued for waiving the bond requirement by showing it has $500,000 in assets, *see* N.C. Gen. Stat. § 75-144(b), it conspicuously refrained from doing so. *See* Dkt. 63. Because Red Hat will be prejudiced if CAS's apparent lack of funds means Red Hat cannot recover the fees that it will be owed under the APAA, a stay will have the additional benefit of mitigating some of that prejudice by preventing Red Hat from incurring further expenses while the EPRs are pending.

For these reasons, because the requested stay will not cause any undue prejudice or tactical disadvantage to CAS, this third factor also favors a stay.

## V. CONCLUSION

For the reasons set forth above, a stay of this case is warranted pending the outcome of the USPTO's reexamination of the seven asserted patents.

15

DATED: February 20, 2026

Respectfully submitted,

*/s/ Yungmoon Chang*
Todd M. Friedman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
tfriedman@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Brandon H. Brown (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
bhbrown@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Yimeng Dou (admitted *pro hac vice*)
Yvonne Beeler (admitted *pro hac vice*)
Yungmoon Chang (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr, Suite 1700
Costa Mesa, CA 92626
Telephone: (714) 982-8822
Facsimile: (714) 982-8844
yimeng.dou@kirkland.com
yvonne.beeler@kirkland.com
yungmoon.chang@kirkland.com
Local Civil Rule 83.1(e) Attorney for Plaintiff

Richard T. Matthews (N.C. #32817)
WILLIAMS MULLEN
P.O. Drawer 1000
Raleigh, NC 27602-1000
Telephone: +1 919 981 4000
Facsimile: +1 919 981 4300
rmatthews@williamsmullen.com
Local Civil Rule 83.1(d) Attorney for Plaintiff

*Attorneys for Plaintiff Red Hat, Inc.*

16

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this day, the foregoing document was filed electronically by using the Eastern District of North Carolina CM/ECF System. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's electronic filing system:

WARD AND SMITH, P.A.
Gavin B. Parsons
NC State Bar No. 28013
751 Corporate Center Drive, Suite 300
Post Office Box 33009
Raleigh, NC 27636-3009
Tel: (919) 277-9127
Fax: (919) 277-9177
Email: GBParsons@wardandsmith.com

STINSON LLP
B. Scott Edison, #57757MO
Timothy D. Krieger, #57832MO
Julie C. Scheipeter, #65978MO
Zachary T. Buchheit, #71816MO
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Tel: (314) 863-0800
Fax: (314) 259-3924
Email: scott.eidson@stinson.com
Email: tim.krieger@stinson.com
Email: julie.scheipeter@stinson.com
Email: zachary.buchheit@stinson.com

Judith S. Araujo, #54102CO
1144 Fifteenth St., Suite 2400
Denver, CO 80202
Tel: (303) 376-8400
Fax: (303) 376-8439
Email: judith.araujo@stinson.com

Alexandra P. Stanley, #0400356MN
50 South Sixth St., Suite 2600
Minneapolis, MN 55402
Tel: (612) 335-1585
Fax: (612) 335-1657
Email: alexandra.stanley@stinson.com

By: */s/ Yungmoon Chang*
Yungmoon Chang

17